PEOPLE v ADKINS (AFTER REMAND)

PEOPLE v SUGGS (AFTER REMAND)

Docket Nos. 102370, 104085. Argued March 6, 1996 (Calendar Nos. 14-15).
    Decided July 30, 1996. Rehearing denied in *Suggs*, 453 Mich 1205.

Kenneth R. Adkins was convicted by a jury in the Detroit Recorder's
    Court, Michael J. Callahan, J., of five counts of third-degree crimi-
    nal sexual conduct and one count of unarmed robbery. Two days
    before the trial, the court granted the defendant's motion to pro-
    ceed in propria persona. The Court of Appeals, BRENNAN, P.J., and
    REILLY and DANHOF, JJ., affirmed the defendant's convictions in an
    unpublished opinion per curiam (Docket No. 143693). In lieu of
    granting leave to appeal, the Supreme Court remanded the case to
    the Court of Appeals for reconsideration in light of *People v Den-
    nany*, 445 Mich 412 (1994). 447 Mich 1007 (1994). On remand, the
    Court reversed in an unpublished opinion per curiam, noting that
    the trial court completely failed to ensure that the defendant effec-
    tively waived his right to counsel (Docket No. 180218). The people
    appeal.

Ronny Suggs was convicted by a jury in the Detroit Recorder's Court,
    Thomas Jackson, J., of three counts of first-degree criminal sexual
    conduct. The Court of Appeals, MICHAEL J. KELLY, P.J., and GRIBBS
    and C. W. SIMON, JJ., reversed in an unpublished opinion per curiam
    (Docket No. 90946). Before retrial, the defendant elected to pro-
    ceed in propria persona, and again was convicted of three counts
    of first-degree criminal sexual conduct. The Court of Appeals,
    MACKENZIE, P.J., and HOOD and WHITE, JJ., ordered supplemental
    briefing to address whether the defendant's waiver of counsel was
    sufficient under MCR 6.005 and the pertinent case law (Docket No.
    122775). Thereafter, the Court affirmed the defendant's conviction
    in an unpublished opinion per curiam. The Supreme Court
    remanded the case to the Court of Appeals for reconsideration, 447
    Mich 994 (1994). On remand and rehearing, the Court of Appeals,
    reversed in an unpublished opinion per curiam and remanded the
    case for a third trial, citing improper waiver of counsel (Docket No.
    179928). The people appeal.

In an opinion by Justice MALLETT, joined by Chief Justice BRICKLEY, and Justices BOYLE, RILEY, and WEAVER, the Supreme Court *held*:

Trial courts must substantially comply with the requirements set forth in both *People v Anderson*, 398 Mich 361 (1976), and MCR 6.005(D) before granting a defendant's request to proceed in propria persona. Substantial compliance requires the court to discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. If the court is uncertain regarding whether any of the waiver procedures are met, the defendant's request to proceed in propria persona should be denied and the reasons for the denial noted on the record. The defendant then should continue to be represented by retained or appointed counsel, unless the court determines substitute counsel is appropriate.

1. Self-representation is an implicit constitutional right. However, a defendant either has a right to counsel or a right to proceed in propria persona, but not both. Proper compliance with the waiver of counsel procedures is a necessary antecedent to a judicial grant to proceed in propria persona. The court must engage, on the record, in a methodical assessment of the wisdom of self-representation, and the defendant must exhibit an intentional relinquishment or abandonment of the right to counsel. A presumption of waiver from a silent record is impermissible; the record must show that the accused was offered counsel, but intelligently and understandingly rejected the offer. Anything less is not waiver.

2. Under the waiver of counsel requirements of *People v Anderson*, a defendant's request to proceed in propria persona must be unequivocal. The defendant must assert the right knowingly, intelligently, and voluntarily, and the trial court must make the defendant aware of the dangers and disadvantages of self-representation. Further, the court must establish that the defendant will not unduly disrupt the court while acting pro se. The court also must satisfy the requirements of MCR 6.005 by offering the defendant the assistance of an attorney and advising the defendant about the possible punishment for the charged offense. A record must be established to show compliance with the court rule and *Anderson* during the initial waiver process. The effectiveness of an attempted waiver does not depend on what the court says, but, rather, what the defendant understands. The particular method of inquiring into and satisfying these concepts is decidedly up to the trial court, as long as it substantially complies with the requirements.

3. In these cases, the trial courts substantially complied with the waiver of counsel procedures. The records support the trial courts' findings that both defendants effectively waived their right to counsel. Therefore, the judicial grants of the defendants' requests to proceed in propria persona were proper, requiring reversal and reinstatement of their convictions.

Justice BOYLE, joined by Justice RILEY, concurring, stated that the substantial-compliance test is merely one method of determining that a defendant's waiver of the right to counsel was knowing and voluntary. If the record illustrates that a defendant made the decision to proceed pro se with eyes open, the voluntary and knowing standard has been fulfilled and the waiver is valid.

*Adkins,* reversed.

*Suggs,* reversed.

Justice CAVANAGH, concurring in part and dissenting in part, stated that in assessing the adequacy of a defendant's alleged assertion of the right to self-representation, a court first must determine whether the request to proceed in propria persona is unequivocal. Only if it was does the analysis proceed to determining whether the right was asserted knowingly, intelligently, and voluntarily. In *Suggs,* the defendant's dismissal of counsel was not the result of an unequivocal desire to represent himself, but was the result of a justifiable dissatisfaction with counsel's failure to consult with him. The trial court, without conducting the proper inquiry, operated at all relevant times under the mistaken and uninvestigated assumption that Suggs had unequivocally waived his right to counsel and asserted his right to self-representation.

Substantial compliance with *People v Anderson* and MCR 6.005(D) is required to provide adequate protection of a defendant's right to counsel and the right of self-representation. In this case, neither the first prong of the *Anderson* inquiry nor the requirements of MCR 6.005(D) were complied with, substantially or otherwise.

Justice LEVIN, dissenting, stated that Suggs' waiver of his right to counsel was not valid. Rather than unequivocally waiving counsel, he made a clear and unequivocal statement that he did not want to represent himself. Although Adkins' waiver was unequivocal, it was not knowing, intelligent, or voluntary.

*People v Anderson,* requires a trial court to make a pro se defendant aware of the dangers and disadvantages of self-representation. Under the court rules, making a defendant sufficiently knowledgeable includes advising of the charge and the maximum and mandatory minimum prison sentences and determining whether the defendant understood the risk of self-representation.

In *Adkins,* the judge did not apprise the defendant of the possible range of sentences associated with the offense and failed to particularize the risks involved in self-representation. The methodical assessment or short colloquy with the defendant consisted of only the judge's admonition of the seriousness of the case and a solitary, compound leading question whether the defendant understood that there is always a hazard in self-representation, without explaining what the risks were. It is clear that the defendant had no idea what he was about to face, nor was he aware of how his case might be prejudiced if he proceeded without legal counsel. To ensure that a defendant truly appreciates the dangers and disadvantages of self-representation, at a minimum, a defendant's waiver should be made with an apprehension of the nature of the charges, the statutory offenses included within them, and the range of allowable punishments.

MCR 6.005(D)(1) requires only that the trial judge apprise the defendant of the charge, the maximum possible prison sentence, any mandatory minimum sentence, and the risk involved in self-representation; it is unlikely that an omission would create an appellate parachute.

Because of the enormous importance and role that an attorney plays at a criminal trial, a trial court's primary function should be to assure that the defendant is making the decision to proceed alone only after being apprised of all necessary and relevant information and that the waiver is unequivocal and knowing, intelligent, and voluntary. The majority, by excusing the woefully inadequate procedures undertaken by the trial judges in these cases condones a process that fails to assure that a defendant will proceed without counsel only after indicating a desire to do so knowingly, intelligently, voluntarily, and unequivocally.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Carolyn M. Breen,* Assistant Prosecuting Attorney, for the people in *Adkins.*

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief,

Research, Training and Appeals, and *Don W. Atkins*, for the people in *Suggs*.

State Appellate Defender (by *Gail Rodwan*) for defendant Adkins.

State Appellate Defender (by *F. Martin Tieber*) for defendant Suggs.

### AFTER REMAND

MALLETT, J. This Court consolidated and granted leave to appeal in these two cases to clarify the judicial responsibilities that must be fulfilled before a criminal defendant may waive his right to counsel and be permitted to represent himself.

Trial courts must substantially comply with the waiver of counsel procedures set forth in *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and MCR 6.005(D) before granting a defendant's request to proceed in propria persona. Substantial compliance requires the court to discuss with the defendant the waiver of counsel requirements set forth in both *Anderson* and the court rule, and to find that the defendant fully understands, recognizes, and agrees to abide by these procedures.

We hold that the trial courts in both *People v Adkins* and *People v Suggs* substantially complied with the waiver of counsel procedures provided by this Court. The records support the trial courts' findings that both defendants effectively waived their right to counsel. Therefore, the judicial grants of the defendants' requests to proceed in propria persona were proper. We reverse the decisions of the Court of Appeals granting the defendants new trials.

FACTS AND PROCEDURAL HISTORY

I

*PEOPLE v ADKINS*

In a May 1991 jury trial before Detroit Recorder's Court Judge Michael J. Callahan, defendant Kenneth Ray Adkins was convicted of five counts of third-degree criminal sexual conduct, MCL 750.520d; MSA 28.788(4), and one count of unarmed robbery, MCL 750.530; MSA 28.798.

On April 29, 1991, two days before the scheduled trial, retained counsel Marcus Ellis told the court that Mr. Adkins did not want him to continue to represent him.[1] The prosecutor requested a hearing regarding the reasons for Mr. Adkins' dissatisfaction.

Mr. Adkins testified that he did not like what Mr. Ellis had done about the case and that Mr. Ellis was not "on [his] side." He said that he had been dissatisfied since the preliminary examination and had explained his dissatisfaction to his family, who already had spent "several hundred dollars" on the case. Despite his alleged dissatisfaction, Mr. Adkins had not apprised the court of his feelings about Mr. Ellis until that morning. When pressed by the court, he was unable to refer to any specific problems with Mr. Ellis. Rather, he said that he did not like the way he saw Mr. Ellis in court and did not value his judgment. Mr. Adkins said to the court: "I just prefer to either[,] I ask questions, appoint me a lawyer, or I will do this on, attempt this on my own."

---

[1] The night before, Mr. Adkins expressed his dissatisfaction with Mr. Ellis' representation. In response, Mr. Ellis told Mr. Adkins that he had a right to represent himself.

Mr. Ellis believed that the breakdown in the attorney-client relationship was apparent. However, the court believed that Mr. Adkins was being dilatory. Mr. Ellis asked the court to appoint another attorney, even though he would remain in the courtroom, so that Mr. Adkins would have "the benefit of talking to a lawyer that he [could] trust." Mr. Ellis did not move to withdraw from the case.

Mr. Adkins told the court: "If you will just have an attorney probably come see me for twenty minutes, until today or tomorrow, I will be ready with an attorney to represent myself with another attorney or ask him to take in whenever he can do anything. I would rather not take any advice from Mr. Ellis." The court declined Mr. Adkins' request for an appointed attorney and said that he could represent himself or have Mr. Ellis represent him. The court ordered Mr. Ellis to remain in the courtroom during the trial, which was to begin on May 1, 1991, either as counsel for Mr. Adkins or as standby counsel if Mr. Adkins chose to proceed in propria persona.

On the morning of May 1, 1991, before jury voir dire, Mr. Adkins decided to represent himself. At this point, the judge proceeded to comply with the initial waiver of counsel procedures.

> *The Court*: Mr. Adkins, we were in court two days ago and you indicated to me that you wished to discharge Mr. Ellis as your attorney, is that correct?
>
> *Defendant Adkins*: Yes.
>
> *The Court*: And that you wished to represent yourself?
>
> *Defendant Adkins*: Yes, I do.
>
> *The Court*: You indicated also that you wanted me to appoint an attorney for you and that you would rely on the services of an appointed attorney, is that correct?

*Defendant Adkins*: Yes, I did say that, but I think I will go on my own.

*The Court*: So it is your desire to represent yourself?

*Defendant Adkins*: Yes, it is.

*The Court*: Sir, how old are you?

*Defendant Adkins*: Twenty-four.

*The Court*: Do you read and write the English language?

*Defendant Adkins*: Yes.

*The Court*: How far did you go in school?

*Defendant Adkins*: 10th Grade.

*The Court*: Do you have any other formal education?

*Defendant Adkins*: No.

*The Court*: Sir, do you know, or has your IQ ever been tested? Do you know what that is?

*Defendant Adkins*: No, I don't.

*The Court*: Before you got into this difficulty with the law, did you have a job?

*Defendant Adkins*: Yes.

*The Court*: What were you doing?

*Defendant Adkins*: Partime [sic] making car parts for a company.

*The Court*: How long had you held that job, Mr. Adkins?

*Defendant Adkins*: I only worked there a short period of time.

*The Court*: Before that what did you do?

*Defendant Adkins*: I did odd jobs.

*The Court*: Now, sir, is it my understanding that you are voluntarily deciding to represent yourself?

*Defendant Adkins*: Yes.

*The Court*: And you feel that you know what you are doing?

*Defendant Adkins*: Yes.

*The Court*: Okay. You understand that even if you dislike Mr. Ellis, or can't stand him, or whatever your feelings are, he is here, that he is seated no more than six feet away from you and that you can ask him any question that you want during the course of this trial, do you understand that?

*Defendant Adkins*: Yes.

*The Court*: Even if you choose to ask him nothing, you understand he is here and he is available to advise you?

*Defendant Adkins*: Yes.

*The Court*: You understand, sir, that there is always a hazard in representing yourself, and that is you are not schooled in the Rules of Evidence and the like, but you still must abide by my rulings, do you understand that?

*Defendant Adkins*: Yes, I do.

*The Court*: You understand there is what we call courtroom decorum where people don't interrupt one another unless there is an objection to be made, and you can't talk over someone else, do you understand that?

*Defendant Adkins*: Yes, I do.

*The Court*: You understand if you wish to make an objection, you just simply say objection and everything stops until we hear from you, do you understand that?

*Defendant Adkins*: Yes.

*The Court*: You understand during the course of the whole trial, however long it takes, except for making objections, you can't interrupt?

*Defendant Adkins*: Yes.

*The Court*: And that if you speak out of turn, there are ways by which you can be disciplined for that?

*Defendant Adkins*: Yes.

*The Court*: And, sir, it is your intention to proceed with this, not in any sense to try to embarrass anyone or yourself, but just to proceed to have the Jury determine by way of verdict what happened?

*Defendant Adkins*: Say that again for me, please.

*The Court*: Sure. You are going to go through this as if it were from beginning to end, you are going to be a gentleman about this and let the Jury decide what happened out there?

*Defendant Adkins*: Yes.

*The Court*: Mr. Cunningham, do you have any questions?

*Mr. Cunningham*: Yes. Could the Court please inquire whether this is the first contact the defendant ever had with the criminal justice system, or, if in fact, he has had prior

contact with the police and the Court, perhaps gained some experience with the prior contact?

*The Court*: That is unfair.

*Defendant Adkins*: This is the second time I have had trial, but the first one was a juvenile, the Judge, they first made a felony out of it. This is the first jury trial I have seen.[2]

*     *     *

*The Court*: Who in this case had hired Mr. Ellis to represent you?

*Defendant Adkins*: My family and I.

*     *     *

*The Court*: Now anytime since October 17th through March 28, 1991, did you ever tell any Judge that you were dissatisfied with the services of your attorney?[3]

*Defendant Adkins*: No, I didn't. If I did, I surely would like to see you prove it to me. That's right. At that time you said, you asked me, I don't recall your ever asking me.

*The Court*: I am asking a different question now. I am asking you, did you ever?

---

[2] The court inquired further into the details of Adkins' previous experience with the criminal justice system to determine his ability to proceed in propria persona.

Previously, Mr. Adkins had represented himself in Taylor District Court, defending against a misdemeanor charge of fighting in a public place. Additionally, as a minor, he had pleaded guilty to drug charges in juvenile court without the benefit of counsel.

[3] The court elicited questions from Mr. Adkins to establish the occurrences where Mr. Ellis appeared on the defendant's behalf. The judge determined that Mr. Ellis had represented Mr. Adkins for over six months. He represented him during his arraignment before Judge Carnovale on October 7, 1990, and during two disposition conferences on October 21, 1990, and November 2, 1990.

On November 9, 1990, Mr. Ellis represented Mr. Adkins during a calendar conference before Wayne Circuit Judge Hathaway, and on December 24, during a final conference before Judge Hathaway. On January 22, 1991, Mr. Ellis attended an evidentiary hearing before Judge Olzark. The evidentiary hearing was held in part on January 22-24, 1991. After this hearing, Mr. Ellis went before the court once more on Mr. Adkins' behalf.

*Defendant Adkins*: No, I didn't. I told him that I had
problems right then. I was hoping he would change.

After questioning Mr. Adkins about his decision to
proceed in propria persona, the judge analyzed the
defendant's response under *Anderson.*

*The Court*: Okay. Well, we are proceeding to trial today. I
rely on *People versus Anderson,* 398 MichAp [sic] 401 from
the Michigan Supreme Court. The indication is that [a] trial
judge can in some circumstances allow a person to proceed
on their own. Mr. Adkins has indicated to me unequivocally
that he wishes to represent himself. An earlier request he
had made to me asking for alternative indigent counsel be
appointed for him. He is [sic] withdrawn that. He knows
what he is asking. He is doing it voluntarily and intention-
ally, I so find. And he understands the hazards, the disad-
vantages of representing himself. He agreed in open court
that he will be gentlemanly in conduct in his defense, that
he will not burden or inconvenience this Court with the
administration of the Court business. I find that he could
read and write the English language and that he is going to
have his desire granted and that is that he will be permitted
to represent himself.

The court concluded by asking the defendant if he
was prepared to hire a new lawyer. Mr. Adkins said
he was not. The judge then granted the defendant's
motion to proceed in propria persona.

For the first two days of trial, Mr. Adkins repre-
sented himself. On the third day, retained attorney
Markus Simon appeared on behalf of Mr. Adkins and
requested a one- or two-day adjournment so that he
could familiarize himself with the case. Mr. Simon
explained that he had only been retained the previous
afternoon and was not prepared to proceed. He also
informed the court that Mr. Adkins was unable to

read or write as evidenced by Mr. Adkins' trial notes, which neither he nor Mr. Adkins could read.[4]

The judge denied Mr. Simon's request, stating that he felt it was not made in good faith, noting the undesirable effects of a delay. The judge recognized that victims now have a right to a speedy trial of their alleged attacker and that because the trial was already in progress, a delay because of an adjournment was unwarranted. Later that day, Mr. Simon again entered his appearance as Mr. Adkins' attorney. The court said it would allow him to represent Mr. Adkins as long as he was ready to go forward immediately. The court also ordered Mr. Ellis to remain in the courtroom for consultation.

The jury found Mr. Adkins guilty of five counts of third-degree criminal sexual conduct and one count of unarmed robbery. On May 21, 1991, the court sentenced Mr. Adkins to six ten- to fifteen-year prison terms. Mr. Adkins was represented by Mr. Simon at the sentencing.

Mr. Adkins appealed of right, and, on December 21, 1993, the Court of Appeals affirmed his convictions in an unpublished opinion per curiam (Docket No. 143693). Mr. Adkins applied for leave to appeal to this Court. In lieu of granting leave to appeal, this Court remanded the case to the Court of Appeals for reconsideration in light of *People v Dennany*, 445 Mich 412; 519 NW2d 128 (1994).   447 Mich 1007 (1994).   On remand, on February 15, 1995, the Court of Appeals reversed the convictions, stating:

---

[4] The judge noted that Mr. Adkins testified under oath that he could in fact read and write. Mr. Adkins denied ever being questioned about his literacy.

There was no consensus among the justices in *Dennany* with regard to the consequences of failure to fully follow the court rule and *Anderson*. However, the main concern expressed in both *Anderson* and *Dennany* was that the trial court ensure that the defendant was making a decision to act as his own counsel with his eyes open. The trial court in this case completely failed in that regard. [Unpublished opinion per curiam (Docket No. 180218).][5]

On October 18, 1995, this Court granted plaintiff's application for leave to appeal. 450 Mich 883.

*PEOPLE v SUGGS*

On November 13, 1985, defendant Ronny Suggs was convicted of three counts of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), following a jury trial before Detroit Recorder's Court Judge Thomas E. Jackson. On December 2, 1985, the court sentenced defendant to three concurrent terms of thirty to fifty years. In an opinion per curiam, issued October 26, 1988 (Docket No. 90946), the Court of Appeals reversed Mr. Suggs' convictions.

Following the reversal of his first conviction,[6] Mr. Suggs was returned to Detroit Recorder's Court, and, on February 10, 1989, Craig Daly was appointed to represent him during retrial. Three weeks later, on March 3, 1989, at a pretrial conference, a hearing on a motion for reduction of bond was denied.

On March 17, 1989, Mr. Daly asked to be removed as counsel for Mr. Suggs in view of a letter that Mr.

---

[5] The Court of Appeals found that in light of *Dennany*, the defendant was incorrectly permitted to proceed in propria persona because he was not informed of the hazard of self-representation.

[6] Defendant's first conviction was reversed and remanded on grounds unrelated to his current appeal.

Suggs had sent to him and the court, indicating that he did not want Mr. Daly to represent him and that he wanted to represent himself.[7] Without further inquiry into the nature of Mr. Suggs' dissatisfaction with Mr. Daly, and without further inquiry into Mr. Daly's desire to terminate his representation, the court granted Mr. Daly's request. The judge did not ask Mr. Suggs about the validity of the letter, nor did he question Mr. Suggs' desire to proceed in propria persona at this time.[8]

Immediately before trial began on June 19, 1989, the court questioned Mr. Suggs about his decision to

---

[7] The letter is not part of the record and could not be located for purposes of appeal.

[8]  *Mr. Daly*: Your Honor, for the record, Craig Daly on behalf of Mr. Suggs. Mr. Suggs wrote a letter to me, I believe he also sent one to the Court, indicating that he didn't want me to represent him and that he wanted to represent himself. I think under the circumstances it would be best if Mr. Suggs had another attorney. Apparently he does not want me to represent him and I think under the circumstances I should not. I'm not interested in representing him either as his attorney or second chairing a case in which he represented himself.

*The Court*: You must have been reading my mind there in anticipating that, anyway. I understand, Mr. Daly. I will excuse you from any further responsibility in this case.

*Mr. Daly*: Thank you. I have an extensive file on Mr. Suggs, so when the new attorney is appointed he should contact me for the transcripts, et cetera.

*The Court*: Okay. We'll do that then.

*Mr. Daly*: Thank you very much.

*The Court*: Mr. Suggs, I'm going to—you can represent yourself if you want to. I will give you—I'm sure you are aware of the hazards of doing that—I'm going to appoint at least advisory counsel to assist you and you can, you and that counsel can discuss whatever you might want to do in representing yourself. I hope to be able to do that today.

*Defendant Suggs*:  Okay. Thank you, Your Honor.

proceed pro se.[9] This was the defendant's initial attempt at waiving his right to counsel.

> *The Court*: Understanding, Mr. Moore, that Mr. Suggs wishes to represent himself and proceed in pro per?
> *Mr. Moore*: That is my understanding. I present Mr. Suggs to answer that specifically.
> *The Court*: Mr. Suggs?
> *The Defendant*: Yes, this is how the deal is. . . .

After a brief sidetrack, the judge explained to the defendant the rules of self-representation.[10]

> *The Court*: Let me say there are some rules to play by when you, the same as yourself or anyone acting as a lawyer.
> First of all, you are not allowed anymore than what the lawyer is allowed. You don't get any kind of special privileges when you represent yourself. Part of that, you don't interrupt the Court when the Court is speaking. I will give you a chance to make your statement and what you have to say. When I respond to them, you sit and be quiet and don't interrupt me.
> More than that, I hope you discuss the issues regarding the rules of evidence and matters of procedure with Mr. Moore to get some guidelines on how to present those and I think we all can save some time on this.

After another sidetrack from the waiver of counsel issue, the judge continued to explain to the defendant his rights.

---

[9] On March 17, the judge appointed W. Frederick Moore to replace Mr. Daly. This appointment was not on the record; however, it appears that Mr. Moore was a full-fledged counsel, not merely standby counsel, at this point.

[10] The record indicates that Mr. Suggs was so eager to defend himself at trial that he kept interrupting the judge with questions about the case.

*The Court*: Let's proceed with this first and then try to get some of the things straightened out.

*The Defendant*: Okay.

*The Court*: Now, you do have the U S Supreme Court by way of the Sixth Amendment that says in the case of [*Faretta*] v *California* here, found at [422 US] 806[; 95 S Ct 2525; 45 L Ed 2d 562], a 1975 decision, there is an explicit guarantee for one to represent oneself. It is also found in the Michigan Constitution.

Now there is, and I think there should be some things you should understand, okay.

Do you fully understand you have a right to a have a lawyer represent you throughout the proceedings and if you cannot afford to retain counsel, that the Court will appoint counsel for you?

*The Defendant*: You asked did I understand?

*The Court*: Yes.

*The Defendant*: Yes, I do.

*The Court*: Now, do you further understand that I must make a determination throughout what would disrupt and inconvenience and unduly burden the Court and the Court's business, I realize it is that of judgment call and it depends on you conducting yourself in the proper manner. I realize you are not trained in the law and won't be able to represent yourself the same as a lawyer would represent you. There are some procedure rules and you have to follow the rules.

*The Defendant*: Yes, I do.

*The Court*: Do you further understand there is an inherent danger in you representing yourself. Those include not asking proper questions. It may include not being able to make a proper statement or misstatement about the manner in which you represent yourself or cross-examine a witness. There may be a lot of inherent possibilities there in representing yourself. Do you understand that those things do exist and that you will not be able to raise issues, you know, later on that were matters that might have been better handled by an attorney representing you, do you understand that?

*The Defendant*: Yes, I understand that.

*The Court*: You still wish to represent yourself?

*The Defendant*: Yes.

Your Honor, you recall when I dismissed the attorney, Mr. Craig Daily [sic], I sent a letter to the Court besides the letter I sent to Craig Daily explaining to the Court why I was dismissing Craig Daily. It's not that I don't want an attorney to represent me, it's just that Craig Daily never spoke to me. I had a trial date and never had a chance to talk to my attorney. I couldn't understand it, it's unprofessional.

*The Court*: Look, I am telling you I do not have a problem with you representing yourself and recognizing the fact that there is case law that says you can. I am also obligated to tell you the problems and pitfalls of that and have you unequivocally indicate on the record you understand those and you do wish to represent yourself.

*The Defendant*: I understand—I understand what you said, yes.

*The Court*: Okay, fine. Do you have any other preliminary issues that you want to bring up?

*The Defendant*: No, Your Honor.

After proceeding in propria persona, Mr. Suggs was again convicted of three counts of first-degree criminal sexual conduct.

After an appeal was submitted, the Court of Appeals entered an order on May 6, 1993 (Docket No. 122775), stating that it could not adequately address the issues without supplemental briefs, addressing the issue whether defendant's waiver of counsel was sufficient under MCR 6.005(E) and the pertinent case law. The panel also directed both parties to file supplemental briefs addressing this issue.[11]

---

[11] In response to the appellate Court's May 6 order, defense counsel filed a supplemental brief and addressed the issue by stating that he did not wish to alter his original appellate strategy. Plaintiff responded to the Court's order by arguing that the defendant had abandoned the issue and that the waiver of counsel was proper.

On January 27, 1994, the Court of Appeals affirmed Mr. Suggs' conviction, finding no error requiring reversal in the three issues raised. With reference to its May 6 order, the Court observed: "In response to this Court's order, defendant, through counsel, stated he did not wish to pursue that issue, but, rather, wished to stand on the brief as filed."[12]

The defendant filed an application for leave to appeal in this Court, raising the three original appellate issues and two additional issues, improper waiver of counsel and ineffective assistance of appellate counsel. By order dated October 25, 1994, this Court considered the application and remanded the case to the Court of Appeals "for consideration as on rehearing granted." 447 Mich 994. On remand and rehearing, the Court of Appeals reversed the defendant's conviction and remanded the case for a third trial because of an improper waiver of counsel.[13]

On November 21, 1995, this Court granted plaintiff-appellant's application for leave to appeal, and ordered that this case be argued and submitted to the Court with *People v Adkins*. 450 Mich 920.

---

[12] Defense counsel filed a motion for rehearing. In it, he again stated that he had considered and rejected the waiver issue on the grounds of appellate strategy. On March 23, 1994, the Court of Appeals denied the motion for rehearing, with the exception of Judge WHITE, who would have granted rehearing.

[13] The Court found that Mr. Suggs' waiver of the right to counsel was equivocal. The panel believed that the trial judge's compliance with the duty to inform Mr. Suggs of the dangers and disadvantages of self-representation was "marginal at best." Unpublished opinion per curiam, issued August 11, 1995 (Docket No. 179928). It added that the record did "not indicate that defendant was apprised of the charge or the range of permissible punishment."

ANALYSIS

II

The United States Supreme Court recognizes self-representation as an implicit constitutional right. "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails. . . . To thrust counsel upon the accused, against his considered wish, thus violates the logic of the [Sixth] Amendment." *Faretta v California, supra* at 819-820. Defendants are also explicitly afforded the right to proceed in propria persona by the Michigan Constitution and state statute. Const 1963, art 1, § 13, MCL 763.1; MSA 28.854.[14] This Court, however, has found that a defendant has either a right to counsel or a right to proceed in propria persona, but not both.[15] Consequently, there is an unavoidable tension created between two constitutional rights when a defendant chooses self-representation.

Proper compliance with the waiver of counsel procedures set forth by this Court is a necessary antece-

---

[14] Const 1963, art 1, § 13 provides: "A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney." A majority of this Court has found art 1, § 13 applicable to criminal settings. *People v Anderson, supra* at 366. See also *Faretta* at 814, quoting *People v Haddad,* 306 Mich 556; 11 NW2d 240 (1943).

In addition, MCL 763.1; MSA 28.854 provides:

On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face.

[15] *Dennany* at 442. A judge, however, has discretion to appoint, either sua sponte or by request, standby counsel to assist the pro se defendant. *Id.* at 443. See also *Faretta* at 834.

dent to a judicial grant of the right to proceed in propria persona. Proper compliance requires that the court engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant.[16] The defendant must exhibit "an intentional relinquishment or abandonment" of the right to counsel, and the court should " 'indulge every reasonable presumption against waiver' " of that right. *Johnson v Zerbst*, 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938).

The presumption against waiver is in large part attributable to society's belief that defendants with legal representation stand a better chance of having a fair trial than people without lawyers.[17] " 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' " *People v Dunn*, 380 Mich 693, 698; 158 NW2d 404 (1968), citing *Carnley v Cochran*, 369 US 506, 516; 82 S Ct 884; 8 L Ed 2d 70 (1962). In short, if a judge does not believe the record evidences a proper waiver, the judge should note the reasons for his belief and require counsel to continue to represent the defendant.

After careful review of waiver of counsel case law, this Court extrapolated three main requirements that

---

[16] Although the right to proceed in propria persona is constitutionally protected, it is not absolute. *Dennany* at 427. Rather, the determination when self-representation is appropriate is largely within the discretion of the trial judge. *Anderson* at 366.

[17] See, generally, *Faretta. United States v Sandles*, 23 F3d 1121, 1126 (CA 7, 1994), citing *Patterson v Illinois*, 487 US 285, 298; 108 S Ct 2389; 101 L Ed 2d 261 (1988).

a court must comply with in the waiver of counsel context. *People v Anderson, supra* at 366-367. First, the defendant's request must be unequivocal.[18] *Id.* at 367. Second, the defendant must assert his right to self-representation knowingly, intelligently, and voluntarily. In assuring a knowing and voluntary waiver, the trial court must make the defendant aware of "the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 368. Third, the court must establish that the defendant will not unduly disrupt the court while acting as his own counsel. *Id.*

In addition to *Anderson*, judges must satisfy the requirements of MCR 6.005 with respect to a defendant considering self-representation. The purpose of MCR 6.005, like *Anderson*, is to inform the defendant of the risks of self-representation.[19] The rule requires the court to offer the assistance of an attorney and to advise the defendant about the possible punishment for the charged offense.[20] Clearly, this Court's deci-

---

[18] Where a defendant, for whatever reason, has not unequivocally stated a desire for self-representation, the trial court should inform the defendant that present counsel will continue to represent him. *People v Ratliff*, 424 Mich 874 (1986).

[19] The comments to MCR 6.005(D) state in pertinent part:

The requirements of subrules (1) and (2) are intended to ensure that the defendant's decision to waive the right to representation and to proceed without a lawyer is an informed and voluntary one.

[20] MCR 6.005(D) provides:

[Text *effective until January 1, 1996.*] If the court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. The court may not permit the defendant to waive the right to be represented by a lawyer without first

sion to incorporate these concepts into a court rule indicates their importance in the waiver process. This Court expects that judges will create a record that establishes the trial court's compliance with the court rules and *Anderson* during the initial waiver process.[21]

Application of the waiver of counsel procedures is the duty of the court. The trial judge is in the best position to determine whether the defendant has made the waiver knowingly and voluntarily. *United States v Berkowitz*, 927 F2d 1376, 1383 (CA 7, 1991). Further, the effectiveness of an attempted waiver does not depend on what the court says, but rather, what the defendant understands.[22] Consequently, other facts, such as evidence of a defendant's intentional manipulation or delay of the court proceedings as a tactical decision may favor a judicial finding of a

---

[Text *effective January 1, 1996.*] If the court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

[21] This Court recognizes that there are any number of factors or influences that may cause a defendant to appreciate the opportunity to terminate his pro se term and proceed with the assistance of counsel later in the courtroom proceedings. The comments to MCR 6.005 indicate that this Court does not desire or expect that a trial court will repeat the inquiry required at the initial waiver of counsel procedure unless the judge believes the particular circumstances warrant such an inquiry.

[22] See also *Fitzpatrick v Wainwright*, 800 F2d 1057, 1065 (CA 11, 1986). Merely going through the requirements without sensitivity to the defendant's reaction to these issues is insufficient.

knowing and intelligent waiver. *United States v Sandles*, 23 F3d 1121, 1129 (CA 7, 1994).[23]

Waiver of counsel issues arise most often, and are most difficult for judges, in cases in which a defendant is unhappy with his counsel close to the onset, or during the course of, a trial.

> Reluctance on the part of many defendants to face the reality on trial day morning that the moment of truth is at hand is a familiar fact of life in the criminal justice system. Experienced trial judges, such as the able judge in this case, are thoroughly familiar and regularly confronted with trial day adjournment requests, advanced for countless reasons and frequently coupled with parallel and conditional requests to discharge counsel and proceed pro se. [*Anderson* at 375.]

For judges, dealing with such double-edged requests further complicates the already technical process of the waiver of counsel.

The Court recognizes and sympathizes with the Catch 22 judges face in the waiver of counsel setting.[24] On the one hand, defendants have a right to counsel. On the other hand, defendants have a right to self-representation. We realize the potential for savvy defendants to use these competing rights as a means of securing an appellate parachute.

---

[23] *United States v Bell*, 901 F2d 574, 579 (CA 7, 1990) (the defendant's decision to proceed in propria persona as a tactical decision was a relevant factor in establishing a knowing waiver).

[24] [A] defendant who raises the possibility of representing himself at trial places the district court between the Scylla of trammeling the defendant's constitutional right to present his own defense, and the Charybdis of shirking its "constitutional duty to ensure that the defendant only represents himself with full awareness that the exercise of that right is fraught with dangers." [*Sandles* at 1126 (citations omitted).]

> "We believe that the record in this case unmistakenly
> shows that defendant understood exactly what he was
> doing and chose to represent himself while fully aware of
> his alternatives. To permit a defendant in a criminal case to
> indulge in the charade of insisting on a right to act as his
> own attorney and then on appeal to use the very permission
> to defend himself in pro per as a basis for reversal of con-
> viction and a grant of another trial is to make a mockery of
> the criminal justice system and the constitutional rights
> sought to be protected. We would not permit it." [*Dennany*
> at 436, quoting *People v Morton*, 175 Mich App 1, 8-9; 437
> NW2d 284 (1989).]

Consequently, it is the desire of this Court to set forth, through these two cases, the judicial inquiry required before a defendant's waiver of counsel is justified.

We agree with Justice BOYLE's concurrence in *Dennany* that *Anderson* does not favor a litany approach. See also *Guilty Plea Cases*, 395 Mich 96; 235 NW2d 132 (1975). We also believe, however, that the substantive requirements in *Anderson* and the court rule are worthy of attention in every initial waiver of counsel by a criminal defendant. See *Dennany*. The *Anderson* and court rule requirements are merely vehicles to ensure that the defendant knowingly and intelligently waived counsel with eyes open. See *Anderson* and *Dennany*. A particular court's method of inquiring into and satisfying these concepts is decidedly up to it, as long as the concepts in these requirements are covered.[25]

---

[25] "Red flags" that indicate a defendant's uncertainty regarding any of the questions the court uses to facilitate the defendant's understanding of the waiver requirements must be addressed by the trial judge. The judge must be able to ease the defendant's uncertainty after a reasonable

We believe the substantial compliance test adopted by the United States Court of Appeals for the Sixth Circuit in *United States v McDowell*, 814 F2d 245 (CA 6, 1987), is an effective way to address the waiver of counsel issue. In *McDowell*, the court advised:

> In the future, whenever a federal district judge in this circuit is faced with an accused who wishes to represent himself in criminal proceedings, the model inquiry or one covering the same substantive points along with an express finding that the accused has made a knowing and voluntary waiver of counsel, shall be made on the record prior to allowing the accused to represent himself. [*Id.* at 250.]

The test " 'requires substantial compliance and not literal adherence to the guidelines in the *Bench Book*.' " (1 Bench Book for United States District Court Judges [3d ed].) *United States v Miller*, 910 F2d 1321, 1324 (CA 6, 1990), quoting *McDowell* at 252 (Engel, J., concurring).[26]

We hold, therefore, that trial courts must substantially comply with the aforementioned substantive requirements set forth in both *Anderson* and MCR 6.005(D). Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant,

---

inquiry, or the judge should deny the defendant's request to proceed in propria persona.

[26] The point is, of course, that the more searching the inquiry at this stage the more likely it is that any decision on the part of the defendant is going to be truly voluntary and equally important that he will not be able to raise that issue later if he does then decide to represent himself. It is simply a question of taking enough time at the moment to make a meaningful record and thus to avoid the very real dangers of reversal should the defendant not prove himself up to the task of his own self-defense. [*Id.* at 252.]

and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach. Further, we believe this standard protects the "vital constitutional rights involved while avoiding the unjustified manipulation which can otherwise throw a real but unnecessary burden on the criminal justice system." *Id.* at 252.

Completion of these judicial procedures allows the court to consider a request to proceed in propria persona. If a judge is uncertain regarding whether any of the waiver procedures are met, he should deny the defendant's request to proceed in propria persona, noting the reasons for the denial on the record. *People v Ratliff*, 424 Mich 874 (1986). The defendant should then continue to be represented by retained or appointed counsel, unless the judge determines substitute counsel is appropriate.

APPLICATION

III

We hold that the trial courts in both *People v Adkins* and *People v Suggs* substantially complied with the waiver of counsel procedures set forth by this Court. The records support the trial courts' findings that both defendants effectively waived their right to counsel. Therefore, the judicial grants of the defendants' requests to proceed in propria persona were proper. We reverse the decisions of the Court of Appeals granting the defendants new trials.

A

The record evidences a proper waiver of counsel by the defendant in substantial compliance with the procedures set forth by this Court.

The defendant's initial waiver of counsel occurred on the first day of trial. On April 29, 1991, the court determined that substitute counsel would not be appointed. The judge did not dismiss Mr. Ellis, and Mr. Ellis did not move to withdraw from the case. Rather, the judge directed both Mr. Ellis and the defendant to be present and ready to proceed on the first day of trial. The court left open the question what capacity Mr. Ellis would play in the trial proceedings.[27] The judge initiated the waiver of counsel procedures on the first day of trial.

The record establishes Mr. Adkins' unequivocal waiver of his right to counsel. On the first day of trial, the court began the proceedings by asking Mr. Adkins if he was "present in court to represent" himself. The defendant responded in the affirmative. The judge then made reference to the substitution of counsel proceedings:

> *The Court*: Mr. Adkins, we were in court two days ago and you indicated to me that you wished to discharge Mr. Ellis as your attorney, is that correct?
>
> *Defendant Adkins*: Yes.
>
> *The Court*: And that you wished to represent yourself?
>
> *Defendant Adkins*: Yes, I do.

---

[27] The judge noted, "Mr. Adkins can represent himself if he wishes. He can have Mr. Ellis represent him or he can do his self representation with the advice of Mr. Ellis. I will leave it to him. But I intend to have the record complete and that Mr. Ellis is present and ready to advise him."

> *The Court*: You indicated also that you wanted me to appoint an attorney for you and that you would rely on the services of an appointed attorney, is that correct?
>
> *Defendant Adkins*: Yes, I did say that, but I think I will go on my own.
>
> *The Court*: So it is your desire to represent yourself?
>
> *Defendant Adkins*: Yes, it is. [Emphasis added.]

The defendant clearly and without hesitation acknowledged his desire to represent himself.

Mr. Adkins' waiver of counsel was also knowing, intelligent, and voluntary. The judge questioned Mr. Adkins about his education and his previous experiences in other judicial forums. The defendant affirmatively stated that he was voluntarily deciding to represent himself. He also acknowledged that he knew what his waiver signified. The judge indicated to Mr. Adkins that Mr. Ellis would serve as standby counsel.[28] The judge explained the function and role of standby counsel to Mr. Adkins. The judge expressed the hazards of self-representation to Mr. Adkins, noting that Mr. Adkins was bound by the judge's rulings despite the defendant's lack of schooling in the Rules of Evidence.

The defendant's behavior is also relevant to our conclusion that he knowingly waived his right to counsel. While evidence of manipulation or delay of the court proceedings does not eliminate the need for other explanations about the hazards of self-representation, it may serve to bolster a trial judge's

---

[28] The appellee correctly asserts that the appointment of advisory or standby counsel by the judge does not eliminate the need to comport with the waiver requirements of *Anderson* or the court rules. *Dennany* at 446. However, the judge in this case did not merely appoint Mr. Ellis standby counsel and dispense with the constitutional waiver procedures.

assessment that a defendant knowingly, intelligently, and voluntarily waived his right to counsel. See *Sandles*, *supra*. The court believed that the defendant was intentionally stalling and manipulating the courtroom proceedings. Mr. Adkins had never expressed to the court any problems with Mr. Ellis' representation at any of the numerous pretrial proceedings. When he did express his concerns, two days before trial, he did not provide any good reason to support his desire to replace Mr. Ellis. Further, the judge found the defense's unsuccessful attempt to move the case to another courtroom right before trial evidence of the defendant's purposeful manipulation and delay of the proceedings. Consequently, we believe the judicial findings and recorded evidence of defendant's manipulation bolsters the trial judge's assessment that the defendant's waiver was made knowingly.

The judge determined that the defendant would abide by the rules of the courtroom. The judge explained courtroom protocol that Mr. Adkins would be expected to follow. Mr. Adkins agreed to abide by the courtroom protocol explained to him by the judge. The judge told the defendant that Mr. Ellis, as standby counsel, would answer any of his questions concerning the case and trial. The judge asked Mr. Adkins if he was prepared to hire a new lawyer. The defendant said he was not. Finally, the judge made reference to *Anderson* and noted the reasons he found compliance with each of the *Anderson* requirements.

We regret the fact that the judge did not make direct reference to the applicable court rule in the waiver context; however, we find that the judge substantially complied with the requirements of MCR

6.005. Under the version of MCR 6.005 in effect during Mr. Adkins' trial, the judge was required to comply with the court rule before permitting the defendant to waive his right to counsel. The judge indirectly addressed part 1 of the court rule during his *Anderson* analysis with the defendant. During that discussion, the judge corrected defendant's statement, "it is a pretty serious case," with "[i]t is a very serious case." Furthermore, the judge had already expressed the nature of the charge and possible punishments to the defendant at his arraignment. The fact that the judge did not specifically address the charged offense and the range of possible punishment is not enough to defeat a finding of substantial compliance with the waiver procedures in this case. The trial court also addressed part 2 of the court rule, concerning the right to counsel, when the judge asked the defendant if he was prepared to hire a new lawyer and when the judge asked the defendant if he still wanted a new lawyer appointed to his case.

In light of this analysis, we believe that the judge substantially complied with the requirements in *Anderson* and MCR 6.005. We conclude this because the judge conveyed the substance of both *Anderson* and the court rule to the defendant. Further, the defendant understood these concepts and made the decision to proceed in propria persona, unequivocally and with his eyes open. The grant of a new trial by the Court of Appeals is reversed.

B

The record evidences a proper waiver of counsel by the defendant in substantial compliance with the procedures set forth by this Court.

The trial record evidences the defendant's unequivocal waiver of counsel. When the court asked Mr. Suggs if his intention was to represent himself, Mr. Suggs answered in the affirmative and immediately began to "try" his case. The court indicated to the defendant that the waiver procedures needed to be finished. The defendant and the court engaged in the following colloquy:

> *The Court*: You still wish to represent yourself?
>
> *The Defendant*: Yes. Your Honor, you recall when I dismissed the attorney, Mr. Craig Daily, I sent a letter to the Court besides the letter I sent to Craig Daily explaining to the Court why I was dismissing Craig Daily. It's not that I don't want an attorney to represent me, it's just that Craig Daily never spoke to me. I had a trial date and never had a chance to talk to my attorney. I couldn't understand it, it's unprofessional.
>
> *The Court*: Look, I am telling you I do not have a problem with you representing yourself and recognizing the fact that there is case law that says you can. I am also obligated to tell you the problems and pitfalls of that and have you unequivocally indicate on the record you understand those and you do wish to represent yourself.
>
> *The Defendant*: I understand—I understand what you said, yes.
>
> *The Court*: Okay, fine.

Although at first glance the defendant's response indicates hesitation, the trial judge again asked the defendant if he understood that he had to indicate

unequivocally on the record in order to be allowed to proceed pro se. The defendant indicated that he understood what the judge said. The defendant also responded affirmatively to the judge's concluding remarks requiring the defendant to clearly indicate whether he wished to represent himself.[29] The judge also told the defendant that he had a right to an attorney.

The trial record establishes that the defendant knowingly and voluntarily waived his right to counsel. The court explained to the defendant that he was not schooled in the Rules of Evidence and that Mr. Moore would help him to comply with these rules. The court also warned the defendant about the dangers inherent in self-representation.

> Do you further understand there is an inherent danger in you representing yourself. Those include not asking proper questions. It may include not being able to make a proper statement or misstatement about the manner in which you represent yourself or cross-examine a witness. There may be a lot of inherent possibilities there in representing yourself. Do you understand that those things do exist and that you will not be able to raise issues, you know, later on that were matters that might have been better handled by an attorney representing you, do you understand that?

---

[29] We believe the court could have responded better than it did to the defendant's hesitation. The court could have stopped and indicated to the defendant that his request to waive his counsel was not unequivocal if he still expressed desire to have an attorney. The trial judge also could have pointed out to the defendant that he already had "new" counsel, Mr. Moore. If the defendant continued to express hesitation, the judge should have denied the defendant's request to proceed in propria persona and had Mr. Moore continue to represent the defendant. However, in light of the fact that the defendant subsequently affirmatively stated his desire to proceed on his own without further equivocation, the defendant's momentary hesitation, alone, is not enough to defeat a finding of substantial compliance with the waiver procedures in this case.

The defendant replied, "Yes."

The defendant's behavior is also relevant to our conclusion that he knowingly waived his right to counsel. In this case, the record indicates that the defendant proceeded in propria persona, in part, for tactical reasons. While evidence that a defendant chose to proceed in propria persona for a tactical reason does not eliminate the need for other explanations about the hazards of self-representation, it may serve to bolster a trial judge's assessment that a defendant knowingly, intelligently, and voluntarily waived his right to counsel. See *Sandles, supra.*

In *United States v Bell,* 901 F2d 574, 579 (CA 7, 1990), the court found that the defendant's decision to proceed in propria persona for a tactical reason was a relevant factor in establishing that the defendant's waiver was knowing. In *Bell,* the defendant's decision was the result of his attorney's unwillingness to present an alibi defense. Mr. Suggs' decision to proceed in propria persona was for a similar reason.

Although we do not have the letter that defendant Suggs sent to the court regarding his dissatisfaction with Mr. Daly, the waiver proceedings lead to the inference that the defendant wanted to provide a consent defense at trial. Throughout the waiver proceedings, the defendant interrupted the court with questions about the presentation of his defense. The defendant apologized to the court for interrupting and assured the judge that he would speak to Mr. Moore "about how better to present the substance of his interruptions." It appears that the substance of the discussion involved Mr. Suggs' unsuccessful attempt to establish that the victim had an abortion. The defendant's theory was that he was a scapegoat for

the victim's unwanted pregnancy. Consequently, we believe the defendant's preparation of his consent defense bolsters the trial judge's assessment that the defendant's waiver was knowingly made.

The record establishes that the court made a thoughtful inquiry into the defendant's ability to abide by courtroom procedures. The judge explained the courtroom protocol that Mr. Suggs would be expected to follow.

> Now, do you further understand that I must make a determination throughout what would disrupt and inconvenience and unduly burden the Court and the Court's business, I realize it is that of judgment call and it depends on you conducting yourself in the proper manner. I realize you are not trained in the law and won't be able to represent yourself the same as a lawyer would represent you. There are some procedure rules and you have to follow the rules.

The defendant responded that he understood and agreed to abide by the courtroom procedure.

We recognize that the judge did not note his reasons for finding a proper waiver as did the court in *Adkins*. However, in light of both the defendant's eagerness to proceed with his case as a tactical decision and the thorough judicial compliance with the other procedures, the judge's oversight in this matter is also not enough to defeat a finding of substantial compliance with the waiver of counsel procedures in this case.

The trial court substantially complied with MCR 6.101(C)(3), the waiver of counsel court rule at the

time of the defendant's trial.[30] At sentencing, the judge indicated to the defendant that he had the right to counsel on appeal and strongly advised the defendant to consider exercising this right. The fact that the judge did not have the defendant reaffirm his right to counsel before sentencing is not enough to defeat a finding of substantial compliance with the waiver of counsel procedures in this case.

In light of this analysis, we believe that the judge substantially complied with the requirements of *Anderson* and MCR 6.005. We conclude this because the judge conveyed the substance of both *Anderson* and the court rule to the defendant. Further, the defendant understood these concepts and made the decision to proceed in propria persona unequivocally and with his eyes open. The grant of a new trial by the Court of Appeals is reversed.

---

[30] MCR 6.101(C)(3), the waiver of counsel court rule in existence at the time of Suggs' trial, was the precursor to MCR 6.005. MCR 6.101(C)(3) provided:

Even though a defendant has waived the assistance of an attorney, the court shall advise the defendant at each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial, or sentencing) of the right to an attorney at public expense. Before the court proceeds,

(a) the defendant must reaffirm that he or she does not want an attorney's assistance; or

(b) if the defendant is eligible for and then requests the appointment of an attorney, the court must appoint one; or

(c) if the defendant wants to retain an attorney and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain an attorney.

CONCLUSION

In light of this analysis, the Court of Appeals decisions granting new trials in *Adkins* and *Suggs* are reversed and the convictions reinstated.

BRICKLEY, C.J., and BOYLE, RILEY, and WEAVER, JJ., concurred with MALLETT, J.

BOYLE, J. (*concurring*). I am in complete agreement with the majority's thoughtful and well-reasoned opinion. I write separately only to add that the substantial-compliance test, as phrased by the majority, is merely one method of determining that a defendant's waiver of the right to counsel was knowing and voluntary. If the record illustrates that a defendant "made his decision to proceed pro se 'with eyes open[,]'" the voluntary and knowing standard has been fulfilled and the waiver is valid. *People v Dennany*, 445 Mich 412, 462; 519 NW2d 128 (1994) (BOYLE, J., concurring), quoting *Faretta v California*, 422 US 806, 835; 95 S Ct 2525; 45 L Ed 2d 562 (1975). See *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976).

RILEY, J., concurred with BOYLE, J.

CAVANAGH, J. (*concurring in part and dissenting in part*). I agree with the majority's statement of the controlling standard for appellate review of an alleged waiver of the right to counsel and assertion of the obverse right to self-representation. As described in the majority opinion, "substantial compliance" with *People v Anderson*, 398 Mich 361; 247 NW2d 857

(1976), and MCR 6.005(D)[1] provides adequate protection of a defendant's rights.[2]

I also agree with the majority's application of this standard in *People v Adkins*. However, I dissent in *People v Suggs* because the majority fails to heed the threshold inquiry of a proper analysis.

I

In assessing the adequacy of a defendant's alleged assertion of his right to self-representation, a court first must determine whether a defendant's request to proceed in propria persona is unequivocal. *Anderson*, 398 Mich 367. Only if that question is answered in the affirmative does the analysis proceed to the second step, which is "whether defendant is asserting his right knowingly, intelligently and voluntarily." *Id.* at 368.

The following statement made by defendant Suggs to the trial judge, and the trial judge's response, is evidence that defendant's alleged desire to represent himself was anything but unequivocal.

> *The Court:* You still wish to represent yourself?
> *The Defendant:* Yes. Your Honor, you recall when I dismissed the attorney, Mr. Craig Daily [sic], I sent a letter to the Court besides the letter I sent to Craig Daily explaining to the Court why I was dismissing Craig Daily. *It's not that I don't want an attorney to represent me, it's just that Craig Daily never spoke to me. I had a trial date and never had a*

---

[1] I also understand the "substantial compliance" standard to be equally applicable to cases in which MCR 6.005(E) is at issue.

[2] I expressly disagree with Justice BOYLE's concurrence because of its strongly implied and inappropriate message to the bench and bar: that procedural safeguards authoritatively set forth by this Court in case law and court rules are merely precatory.

*chance to talk to my attorney.* I couldn't understand it, it's unprofessional.

*The Court*: Look, I am telling you I do not have a problem with you representing yourself and recognizing the fact that there is case law that says you can. I am also obligated to tell you the problems and pitfalls of that and have you unequivocally indicate on the record you understand those and you do wish to represent yourself.

*The Defendant*: I understand—I understand what you said, yes.

*The Court*: Okay, fine. [Emphasis added.]

This emphasized language, and the trial judge's complete disregard of it, indicates that defendant's attempted dismissal of Mr. Daly was not the result of his unequivocal desire to represent himself, but was instead the result of a justifiable dissatisfaction with that attorney's failure to consult with him.[3] This understanding of defendant's actual motivation is an integral factor in the analysis of his alleged waiver of counsel immediately before trial on June 19, 1989.

On March 17, 1989, immediately after granting Mr. Daly's request to be excused from his appointment as defendant's counsel, the trial judge, without any recourse to the procedural safeguards of *Anderson* or MCR 6.005(D), said to defendant: "Mr. Suggs, I'm going to—you can represent yourself if you want to. . . . I'm going to appoint at least advisory counsel to assist you and you can, you and that counsel can discuss whatever you might want to do in representing yourself." *Ante*, p 715, n 8. On June 19, immedi-

---

[3] The majority acknowledges that when the issue of defendant's dissatisfaction with Mr. Daly was first discussed in open court on March 17, 1989, the court did not inquire into the nature of defendant's dissatisfaction, nor did it inquire about his alleged desire to proceed in propria persona. See *ante*, pp 714-715.

ately before trial began, the following exchange occurred between the trial judge and the attorney appointed as "advisory counsel" on March 17:

> "*The Court:* Understanding, Mr. Moore, that Mr. Suggs wishes to represent himself and proceed in pro per?
>
> "*Mr. Moore:* That is my understanding." [*Ante,* p 716.]

In light of the trial judge's statement on March 17 and the majority's acknowledgment that it was not until immediately before trial began on June 19 that defendant made his "initial attempt at waiving his right to counsel," *id.,* it is clear that the trial judge simply (and erroneously) assumed that defendant wanted to represent himself and that this understanding was unquestioningly conveyed to replacement counsel, Mr. Moore, right from the start.[4]

II

The majority correctly notes that "[a]pplication of the waiver of counsel procedures is the duty of the court." *Id.,* p 723. However, the majority fails to heed the real import of this principle. The burden is on the trial court to determine inter alia that a defendant's attempt to waive his right to counsel is unequivocal, not on the defendant to prove that an alleged waiver was not unequivocal. The right to counsel, as a guarantor of a fair trial, is a fundamental right that should not be deemed waived unless the record clearly and unequivocally evidences such waiver, a record that

---

[4] The majority acknowledges that Mr. Moore's "appointment was not on the record," but opines, contrary to the actual evidence adduced, that "it appears that Mr. Moore was a full-fledged counsel, not merely standby counsel . . . ." *Id.,* p 716, n 9.

must be made by the trial judge's diligent inquiry into the relevant factors.

In *Suggs*, then, where the trial court, without conducting the proper inquiry, operated at all relevant times under the mistaken and uninvestigated assumption that defendant had unequivocally waived his right to counsel and asserted his right to self-representation, and where the defendant explicitly stated, "It's not that I don't want an attorney to represent me," neither the first prong of the *Anderson* inquiry nor the requirements of MCR 6.005(D) have been complied with, substantially or otherwise.

LEVIN, J. (*dissenting*). Because *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and MCR 6.005(D), require that a waiver of counsel be unequivocal before it will be given effect, I agree with Justice CAVANAGH's conclusion in *People v Suggs* that Suggs' waiver of his right to counsel was not valid.

On the day the trial was to begin, two days after Suggs stated that he did not wish to proceed with his court-appointed lawyer, the judge explained to Suggs that he had a right to represent himself. He questioned Suggs concerning whether he understood this right. The judge asked Suggs, "You still wish to represent yourself?" Suggs responded "Yes," and then stated:

> Your Honor, you recall when I dismissed the attorney, Mr. Craig Daily [sic], I sent a letter to the Court besides the letter I sent to Craig Daily explaining to the Court why I was dismissing Craig Daily. *It's not that I don't want an attorney to represent me*, it's just that Craig Daily never spoke to me. I had a trial date and never had a chance to talk to my attorney. I couldn't understand it, it's unprofessional.

> *The Court:* Look, I'm telling you I do not have a problem with you representing yourself and recognizing the fact that there is case law that says you can. I am also obligated to tell you the problems and pitfalls of that and have you unequivocally indicate on the record you understand those and you do wish to represent yourself.
>
> *The Defendant:* I understand—I understand what you said, yes.
>
> *The Court:* Okay, fine. Do you have any other preliminary issues that you want to bring up?
>
> *The Defendant:* No, Your Honor. [Emphasis added.]

The judge's response to Suggs' statement that he did not "want" to represent himself indicates either that he was not paying attention to what Suggs said or that he chose to ignore what he said. Either way, the equivocation in Suggs' answer is undeniable.

The majority dismisses Suggs' statement that he did not really want to continue alone as a mere "hesitation."[1] It further states that any equivocation was removed by Suggs' subsequent responses indicating his preference for proceeding in propria persona.

Suggs' answer was not a mere hesitation. It was a clear and unequivocal statement that he did *not* want to represent himself. Although Suggs subsequently indicated on some level that he wished to proceed in propria persona, this indication should be discounted both because his later statements at most make his earlier statement that he did not want to represent himself equivocal and because the leading manner in which the judge posed the questions suggested to Suggs that the judge expected an affirmative answer.

I also part company from the majority in assessing the trial judge's conduct respecting defendant Adkins.

---

[1] *Ante* at 733, n 29.

Although Adkins' waiver was unequivocal, it was not knowing, intelligent, or voluntary as required by this Court in *Anderson*.

This Court stated in *Anderson, supra* at 368, that "[t]he trial court must make the *pro se* defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." According to the court rule, making a defendant sufficiently knowledgeable includes advising him of the charge, the maximum and mandatory minimum prison sentences, and determining whether the defendant understood the risk of representing himself. MCR 6.005(D)(1).

The judge did not apprise Adkins of the possible range of sentences associated with the offense. He failed to particularize the risks involved. The majority acknowledges these deficiencies, but dismisses them as inadequate to disturb what was otherwise "substantial compliance" with the waiver procedure.[2]

I

The majority writes, "[p]roper compliance requires that the court engage, on the record, in a *methodical* assessment of the wisdom of self-representation by the defendant."[3] (Emphasis supplied.) The majority further asserts that "[s]ubstantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees

---

[2] *Ante* at 731.
[3] *Id.* at 721.

to abide by the waiver of counsel procedures."[4] The "methodical assessment" or "short colloquy" with Adkins consisted only of the judge's admonition that this "is a very serious case" and a solitary question asking Adkins whether he understood "that there is always a hazard in representing yourself."

In addition to the cursory nature of the questioning, the judge exacerbated this flimsy questioning by phrasing the question asking Adkins whether he understood the hazards of self-representation in a leading manner and including it in a sentence that also contained two other questions.[5] While there is no rule against using compound or leading questions in this type of proceeding per se, it is noteworthy that such questions provide grounds for objection during a trial because they are considered confusing and suggestive.

Given the importance of the questioning conducted by the judge and the limited cognitive skills of many defendants, one would expect that the judge would have phrased his questions in a form that is clear and readily understood. Instead, it is apparent from the judge's method of questioning that he treated the proceeding much as one might treat a trip to the supermarket—perfunctorily checking things off the shopping list as he went along, with his mind as much focused on the next errands as the task immediately before him.

---

[4] *Id.* at 726-727.

[5] *The Court:* You understand, sir, that there is always a hazard in representing yourself, and that is you are not schooled in the Rules of Evidence and the like, but you still must abide by my rulings, do you understand that?

*Defendant Adkins:* Yes, I do.

The majority finds the judge's efforts sufficient to effectuate a knowing and intelligent waiver. Apparently, the majority believes either that Adkins knew or should have known exactly to what "hazards" the judge was referring, or that warning a defendant that there is, generally, "a hazard in representing [one]self," is enough.

The fallacy of either belief is clear on its face, and only becomes clearer once the particulars of this case are considered. Adkins stated during questioning that he only had a tenth grade education and that until recently he had held only odd jobs. Actually, Adkins was functionally illiterate. It is clear that Adkins had no idea what he was about to face in the forthcoming trial when he opted to represent himself. Nor was he aware of how his case might be prejudiced if he proceeded without legal counsel, the judge's "warning" notwithstanding.

Adkins was, by all accounts, quite inept in representing himself. While cross-examining the victim, Adkins prefaced a question stating, "When I was making love . . . ." The prosecutor objected on the ground that Adkins was stating facts not in evidence. An obviously frustrated Adkins then rephrased the question, "When I was raping you . . . ."

Even if Adkins' inability to understand the perils of self-representation was not so profound, it is incorrect to equate a question asking whether Adkins understood the "hazard" involved with a sufficiently detailed colloquy in which the judge explains what the risks are.[6] The colloquy was so inadequate that the majority could not properly conclude that the

---

[6] As the Oregon Supreme Court noted:

judge "indulge[d] every reasonable presumption against waiver" of the right to counsel.[7] Indeed, I can scarcely imagine a judge doing less to ensure that a defendant is making his decision with his "eyes open." Substantial compliance requires at least what those words imply. It demands that some, i.e., a "substantial," effort be made to ascertain whether in fact this particular defendant actually understands the consequences of his decision to represent himself.

The majority's approval of this most cursory of questioning does not comport with the approach in other jurisdictions. The plurality opinion in *People v Dennany*, 445 Mich 412; 519 NW2d 128 (1994), contains a comprehensive review of what the federal courts require.[8]

---

A colloquy on the record between the court and the defendant wherein the court, in some fashion *explains* the risks of self-representation is the preferred means of assuring that the defendant understand[s] the risks of self-representation. The more relevant information that a trial court provides to a defendant about the right to counsel and about the dangers and disadvantages of self-representation, the more likely it will be that a defendant's decision to waive counsel is an intentional relinquishment or abandonment of a known right or privilege and that the record will so demonstrate. [*State v Meyrick*, 313. Or 125, 133; 831 P2d 666 (1992) (emphasis added).]

See also *State v Frampton*, 737 P2d 183, 187 (Utah, 1987) (generally, a determination whether a defendant has waived his right to counsel knowingly can only be made "after penetrating questioning by the trial court"); *Daniels v State*, 921 SW2d 377, 382 (Tex App, 1996) (the trial court should take an "active role," which includes making the defendant aware of "the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses, and all other facts essential to a broad understanding of the whole matter").

[7] *Johnson v Zerbst*, 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938).

[8] The opinion states:

The majority of federal courts, while acknowledging *Von Moltke* [*v Gillies*, 332 US 708; 68 S Ct 316; 92 L Ed 309 (1948)], have taken

a nonformalistic approach in ascertaining the right of self-representation. See *Hsu v United States*, 392 A2d 972, 983 (DC App, 1978). For instance, the United States Court of Appeals for the Ninth Circuit has stated that "[w]hile no particular form of interrogation is necessary, the court must assure itself that the defendant understands the charges and the manner in which an attorney can be of assistance." *United States v Gillings*, 568 F2d 1307, 1308-1309 (CA 9, 1978). See also *United States v Balough*, 820 F2d 1485 (CA 9, 1987); *United States v Aponte*, 591 F2d 1247, 1250 (CA 9, 1978). The United States Court of Appeals for the Tenth Circuit has stated that "the trial judge should conduct an inquiry sufficient to establish a defendant's knowledge and understanding of the factors" relevant to his decision to waive counsel, *United States v Padilla*, 819 F2d 952, 959 (CA 10, 1987). See also *Sanchez v Mondragon*, 858 F2d 1462, 1465 (CA 10, 1988); *United States v Gipson*, 693 F2d 109, 111 (CA 10, 1982), cert den 459 US 1216 (1983); *United States v Bennett*, 539 F2d 45, 50 (CA 10, 1976), cert den 429 US 925 (1976).

The United States Court of Appeals for the Third Circuit does not require a detailed listing of advice similar to that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, but does require a "searching inquiry" sufficient to satisfy the trial judge that the defendant's waiver was understanding and voluntary. *United States v Welty*, 674 F2d 185, 189 (CA 3, 1982). See also *United States v Gallop*, 838 F2d 105, 109-110 (CA 4, 1988); *Wiesner v Abrams*, 726 F Supp 912, 917 (ED NY, 1989), aff'd without opinion 909 F2d 1473 (CA 2, 1990).

Several courts have stated that a waiver hearing expressly addressing the disadvantages of a pro se defense is much preferred but not absolutely necessary. See, e.g., *Fitzpatrick v Wainwright*, 800 F2d 1057, 1064 (CA 11, 1986); *United States v Bailey*, 219 US App DC 67, 78, n 17; 675 F2d 1292 (1982), cert den 459 US 853 (1982); *Tuitt v Fair*, 822 F2d 166 (CA 1, 1987), cert den 484 US 945 (1987).

The United States Court of Appeals for the Sixth Circuit now requires trial judges to follow the model inquiry set forth in 1 Bench Book for United States District Judges (3d ed), 1.02-2 to 1.02-5. See *United States v McDowell*, 814 F2d 245 (CA 6, 1987), cert den 484 US 980 (1987). Other examples of a model inquiry format are set forth in *People v Arguello*, 772 P2d 87 (Colo, 1989); and *People v Lopez*, 71 Cal App 3d 568, 571-573; 138 Cal Rptr 36 (1977).

The common thread that can be gleaned from these cases is that "[t]he ultimate test is not the trial court's express advice, but rather the defendant's understanding." *Fitzpatrick*, *supra*, p 1065. See also *United States v Harris*, 683 F2d 322 (CA 9, 1982), appeal after remand 726 F2d 558 (CA 9, 1984). The most reliable assurance of

Federal trial judges employ an outline in a bench book (appendix A) as a guide to ensure that the waiver of the right to counsel is knowing and voluntary. The bench book suggests that the judge not only apprise the defendant of the crime of which he is charged, and the maximum and minimum sentences, including the possibility of consecutive sentencing, but also admonishes the judge to warn the defendant that he may not provide the defendant with any advice concerning how to try the case, and encourages the judge to advise the defendant that he "would be far better defended by a trained lawyer . . . ."[9]

Similarly, the American Bar Association Standards for Criminal Justice provides that "[a]n accused should not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry into the accused's comprehension of the offer and capacity to make the choice intelligently and understandingly has been made." To satisfy this guideline, the commentary on the standard notes that "the court should inquire whether the accused apprehends the nature of the charges, the offenses included within them, the allowable punishments, possible defenses to the charges, and circumstances in mitigation thereof, among other factors."[10]

---

an awareness by the defendant of the dangers and disadvantages of self-representation is by means of a colloquy on the record between the judge and the defendant. *Bailey, supra,* p 74. [*Dennany, supra* at 429-431.]

[9] See 1 Bench Book for United States District Court Judges (3d ed), § 1.02-3(1), p 1.02-4 (1986) (attached as appendix A).

[10] 1 ABA Standards for Criminal Justice (2d ed), pp 5-72 to 5-73.

Requiring, at a minimum, some discussion of the risk involved is currently the policy both in federal and other state courts. Recently, in *United States v Moscovits*, 86 F3d 1303 (CA 3, 1996), the defendant sought a new trial on the ground that the colloquy with the judge regarding waiver of the right to counsel did not include a discussion of the possible range of punishments. The court agreed that the absence of such a discussion rendered the proceedings inadequate. It wrote,

> To ensure that a defendant "truly appreciates the 'dangers and disadvantages of self-representation,' . . . '[a defendant's] waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, [and] the range of allowable punishments thereunder.' " [*Id.* at 1306, quoting *United States v Welty*, 674 F2d 185, 188 (CA 3, 1982), quoting *Faretta v California*, 422 US 806, 835; 95 S Ct 2525; 45 L Ed 2d 562 (1975), and *Von Moltke v Gillies*, 332 US 708, 724; 68 S Ct 316; 92 L Ed 309 (1948) (plurality).]

We should require that this approach, as spelled out in the federal bench book and the ABA Standards for Criminal Justice and applied in *Moscovits*, be followed by Michigan judges. Taking the little time needed at the trial level to apprise the defendant of the specific risks involved provides some assurance that the defendant has not lightly waived his right to proceed with counsel. As the United States Court of Appeals for the Sixth Circuit stated:

> [T]he more searching the inquiry at this stage the more likely it is that any decision on the part of the defendant is going to be truly voluntary and equally important that he will not be able to raise that issue later if he does then decide to represent himself. It is simply a question of taking

enough time at the moment to make a meaningful record and thus to avoid the very real dangers of reversal should the defendant not prove himself up to the task of his own self-defense. [*United States v McDowell*, 814 F2d 245, 252 (CA 6, 1987).]

The more searching inquiry approach has been employed in the past by Michigan trial judges. See, e.g., colloquy between Branch Circuit Judge Michael Cherry and the defendant in *People v Lane*, 453 Mich 132; 551 NW2d 382 (1996) (attached as appendix B). We should expect other trial judges in this state to follow the same approach of their colleagues and judges in other jurisdictions.[11]

II

I also question the majority's assertion that "*Anderson* does not favor a litany approach" because of the difficulty of assuring compliance by the trial court in

---

[11] See *McDowell, supra* at 249-250 (adopting the procedure laid out in the Bench Book as a model inquiry to be undertaken by trial judges); *Meyrick*, n 6 *supra*; *Commonwealth v Monica*, 528 Pa 266, 275; 597 A2d 600 (1991) (trial court committed error requiring reversal by allowing the defendant to represent himself "without first conducting a thorough on-the-record colloquy"); *Daniels*, n 6 *supra*; *Prater v State*, 220 Ga App 506, 509; 469 SE2d 780 (1996) (reversal was required where there was no evidence that the defendant "understood the nature of the charges; the statutory offenses included within them; the range of allowable punishments thereunder . . . ; possible defenses to the charges and circumstances in mitigation thereof; or other facts essential to establishing a knowing waiver," citing *Clarke v Zant*, 247 Ga 194; 275 SE2d 49 (1981); *State v Dowler*, 80 Hawaii 246, 250-251; 909 P2d 574 (App, 1995) ("the trial court should make [the defendant] aware of the nature of the charge, the elements of the offense, the pleas and defenses available, the punishments which may be imposed, . . . all other [essential] facts . . . and should inform the defendant . . . that self-representation is detrimental to himself"); *Moore v Commonwealth*, 556 SW2d 161, 163 (Ky App, 1977) (adopting the approach of the *Gillies* plurality that a waiver of the right to counsel is not knowing and voluntary, and hence not valid, unless the defendant is apprised of the charges and range of sentences).

every instance and the likelihood that an omission
may create an appellate parachute for the
defendant.[12]

The majority operates under a misconception that
the litany is somehow arduous or long. It is not. The
only requirements laid out in MCR 6.005(D)(1) are
that the trial judge apprise "the defendant of the
charge, the maximum possible prison sentence for
the offense, any mandatory minimum sentence
required by law, and the risk involved in self-
representation . . . ."

The majority's suggestion that a litany approach has
somehow been universally discredited is without sup-
port. The majority relies in large part on federal cases
that admittedly, do not adhere to this strict approach.
There is a good reason for such departure, however.
In contrast with MCR 6.005(D)(1), which occupies a
mere four lines, the bench book sets forth sixteen
questions or comments that a trial judge is expected
to ask or make before approving the waiver of the
right to counsel.[13] It is thus understandable that on
review an appellate court might not require the trial
court to have phrased the questions exactly as they
read on their face.

The majority also relies on *Guilty Plea Cases*, 395
Mich 96; 235 NW2d 132 (1975), for support. However,
like the bench book, the litany involved when a
defendant pleads guilty is substantially longer than
that called for when a defendant seeks to represent
himself. A minor deviation is thus again understanda-
ble for reasons not applicable in the present case.

---

[12] *Ante* at 725.
[13] See Bench Book, n 9 *supra*.

III

Because we recognize, as the United States
Supreme Court has, "the enormous importance and
role that an attorney plays at a criminal trial," this
Court has a responsibility to assure that a defendant
waives his right only after he is fully apprised of the
risk that he is taking.[14] For this reason, a trial court's
primary function should be to assure that the defend-
ant is making the decision to proceed alone only after
he has been apprised of all necessary and relevant
information.

The majority stresses that the defendant made the
request to proceed in propria persona as part of a
"intentional manipulation"[15] of the judicial system.
There should be but one paramount concern for the
trial judge as he questions the defendant regarding his
desire to proceed in propria persona, however. That
is whether his waiver is unequivocal and knowing,
intelligent and voluntary. Resolving the question
whether defendant is seeking to proceed in propria
persona in an effort to manipulate the system is not
of the same level of concern as the *Anderson* factors
or even the substance of MCR 6.005(D)(1).

I also question the deferential treatment the major-
ity accords the trial court's finding that the defendant
was attempting to delay the start of the trial and
manipulate the system when he sought to represent
himself. While it is true that Adkins did not previously
bring to the court's attention his disapproval of Ellis'
representation, nor did he provide any concrete rea-

---

[14] *Patterson v Illinois*, 487 US 285, 298; 108 S Ct 2389; 101 L Ed 2d 261
(1988).

[15] *Ante* at 723.

sons for his disapproval when he ultimately did address this issue, this aspect of Adkins' conduct is at best only marginally probative of bad intent.

Adkins had only a minimal educational background. It is thus likely that Adkins delayed in bringing his concerns to the judge's attention, and failed to express them in a detailed and articulate fashion once he did, simply because he lacked the intelligence level and verbal skills that more highly educated persons, judges included, often take for granted.

The record contains precious little that would suggest an intent to manipulate or delay. The record is devoid of evidence that Adkins made any motions for an adjournment or obviously frivolous motions. Rather, the record shows that Adkins only moved to have his bail reduced and have evidence suppressed, both of which were understandable under the circumstances, as well as fairly routine given the type of case.

The majority also points to Adkins' motion to move the case to another courtroom.[16] The impetus for this request was Adkins' attorney Ellis, not Adkins himself.

IV

The majority opines that "[t]he *Anderson* and court rule requirements are merely vehicles to ensure that the defendant knowingly and intelligently waived counsel with eyes open."[17] They are much more, however. They are, in fact, under these circumstances, the guardians of defendant's right to a fair trial.

---

[16] *Id.* at 730.
[17] *Id.* at 725.

The majority today, by excusing the woefully inadequate procedures undertaken by these trial judges, condones sloppy conduct. It condones a process that fails to assure that a defendant will proceed without counsel only when he has indicated a desire to do so knowingly, intelligently, voluntarily, and unequivocally.

APPENDIX A

VOLUME 1, BENCH BOOK FOR
UNITED STATES DISTRICT COURT JUDGES,
§ 1.02, ASSIGNMENT OF COUNSEL OR
PRO SE REPRESENTATION

3. If defendant does not wish counsel:

An accused has a constitutional right to represent himself if he chooses to do so. A defendant's waiver of counsel must, however, be knowing and voluntary. This means that you must make clear on the *record* that the defendant is fully *aware of hazards* that he faces and the disadvantages of self-representation.

When a defendant states that he wishes to represent himself, you should therefore ask questions similar to the following:

(a) Have you ever studied law?

(b) Have you ever represented yourself or any other defendant in a criminal action?

(c) You realize, do you not, that you are charged with these crimes: (Here state the crimes with which the defendant is charged.)

(d) You realize, do you not, that if you are found guilty of the crime charged in Count I the court must impose an assessment of $50 ($25 if a misdemeanor committed before Nov. 18, 1988; $25 if a Class A misdemeanor, $10 if Class B. $5 if Class C or infraction committed on or after Nov. 18,

1988)[1] and could sentence you to as many as ___ years in prison and fine you as much as $___?

(Then ask him a similar question with respect to each other crime with which he may be charged in the indictment or information.)

(e) You realize, do you not, that if you are found guilty of more than one of those crimes this court can order that the sentence be served consecutively, that is, one after another?

(f) [If the conduct occurred Nov. 1, 1987, or later] You realize, do you not, that the United States Sentencing Commission has issued sentencing guidelines that will affect your sentence if you are found guilty?

(g) You realize, do you not, that if you represent yourself you are on your own? I cannot tell you how you should try your case or even advise you as to how to try your case.

(h) Are you familiar with the Federal Rules of Evidence?

(i) You realize, do you not, that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?

(j) Are you familiar with the Federal Rules of Criminal Procedure?

(k) You realize, do you not, that those rules govern the way in which a criminal action is tried in federal court?

(l) (Then say to the defendant something to this effect): I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself.

---

[1]  The federal savings [sic] clause, 1 U.S.C. § 109, appears to apply to the provision of the Anti-Drug Abuse Act of 1988, effective Nov. 18, 1988, that changed the fine amounts for misdemeanors. *See, e.g., U.S. v. Schumann,* 861 F.2d 1234 (11th Cir. 1988); *U.S. v. Ross,* 464 F.2d 376 (2d Cir. 1972), *cert. denied,* 410 U.S. 990 (1973).

(m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

(n) Is your decision entirely voluntary on your part?

(o) If the answers to the two preceding questions are in the affirmative, you should then say something to the following effect:

"I find that the defendant has knowingly and voluntarily waived his right to counsel. I will therefore permit him to represent himself."

(p) You should consider the appointment of standby counsel to assist the defendant and to replace him if the court should determine during trial that the defendant can no longer be permitted to represent himself. [*Id.* at 1.02-2 to 1.02-5 (emphasis in the original).]

### APPENDIX B

#### COLLOQUY IN *PEOPLE v LANE*, 453 Mich 132;
#### 551 NW2d 382 (1996)

*The Court*: Thank you. The Defendant has indicated— has filed a—a number of motions. The first of which the Court wishes to address is the motion to discharge counsel and to proceed in propria person [sic].

Mr. Lane, is there anything that you would wish to say in that regard?

*Defendant*: No, sir.

*The Court*: Mr. Lane, certainly in any matter as grave as this one, with the supplemental information, a maximum penalty of up to 15 years in prison is possible. On each of the other three counts, maximum penalties of up to four years and/or fines of not to exceed $2,000 are possible.

Do you have any schooling or training in the law?

*Defendant*: I have just a little bit. I've been studying, so I don't—you know. I'm not as advanced as Mr. Goodwin here, but I feel I'm capable of representing myself in this matter.

*The Court*: What is your educational background?

*Defendant*: I've been to Ja—Jackson Community College, you know. I participated in a paralegal class.

*The Court*: Okay. Have you a high school degree or a GED?

*Defendant*: GED.

*The Court*: Okay. When did you obtain that, please?

*Defendant*: In '89.

*The Court*: And then you've been taking some community college courses through Jackson Community College?

*Defendant*: Yes, sir.

*The Court*: And among those is one paralegal class?

*Defendant*: Right.

*The Court*: Did you prepare the documents in the court file, the motions, or did you have assistance in doing that?

*Defendant*: I prepared them.

*The Court*: Did you have the assistance of a paralegal?

*Defendant*: No, I did it myself.

*The Court*: Certainly, Mr. Lane, one of the adages often quoted in circumstances such as this is the old homily that anyone who represents himself has a fool for a—for a client.

The fact is that Mr. Goodwin is vastly experienced and well-qualified in—in criminal matters such as these. Indeed, one of the reasons that he among other attorneys happens to be appointed on—on criminal cases—and, as a matter of fact, he and another attorney share the public defender contract on all non-prison cases in which people are indigent— is because of his—his experience.

And, quite frankly, I think that you would be far better off with—with Mr. Goodwin as an attorney than trying to represent your—yourself, at least as far as trying the case is concerned, if it goes to trial.

Unless you are well-schooled and versed in the rules of evidence, evidence might get in that would be prejudicial to you that an attorney, knowing the rules of evidence, could make appropriate motions and have the Court exclude.

Certainly the Court is in no position, on its own, to decide such matters as—as hearsay or leading questions or anything else that sometimes objections could be made to.

As far as assisting you in other ways, knowing the—the law, knowing the sufficiency of evidence that the Prosecutor must present in order to fulfill his burden, and knowing which witnesses to call and in asking questions appropriately of the—the particular witnesses also are functions that I believe an attorney would be far better schooled at least, and experienced attorneys trained in providing for you.

Is it still your desire, at this point, to—to represent yourself?

*Defendant*: Yes, sir.

*The Court*: What the Court will do is first ask Mr. Livesay, are there any additional questions that you would ask?

*Mr. Livesay*: No, your Honor.

*The Court*: Certainly I can't force you to—to have an attorney represent you. What I will do is to have Mr. Goodwin available to—to assist you, to answer any questions that you may have. As well, at the time of trial, I will have him available for you to—to assist.

If you persist in your motion to represent yourself, certainly you have that—that right, but the Court would give appropriate instructions to the jury as well that certainly they're not to hold that against you, but you are not to get any benefit from that in their eyes as—as well.

Can you understand that?

*Defendant*: Yes, sir.