*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AUSTIN WADE SMITH,

Defendant-Appellant.

UNPUBLISHED
January 11, 2024

No. 362412
Iosco Circuit Court
LC No. 21-002953-FH

Before: BOONSTRA, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of five counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a), and four counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a). Defendant also appeals his sentence of 95 months to 15 years for the CSC-III convictions and 16 months to 2 years for the CSC-IV convictions. We affirm.

## I. BACKGROUND

Defendant, who represented himself at his jury trial, was convicted as stated on April 19, 2022, for sexually assaulting and raping his 14-year-old cousin when he was 22-years-old. The morning after the rape, defendant gave the victim a Plan B pill and told her to take it. In the days that followed, defendant and the victim exchanged SnapChat messages, which were admitted as exhibits at trial. In those messages, the victim expressed her concerns about getting pregnant, and through his messages, defendant admitted to having sex with the victim.

At a January 31, 2022 status conference, defendant's trial counsel, Stephen Raslich, advised the trial court that defendant wished to represent himself going forward, after which the trial court questioned defendant about his desire. The trial court asked defendant his age and whether he attended law school and stated that defendant was quite young and facing "serious charges." The court also warned defendant that he would be at a distinct disadvantage representing himself and that he would be held to the same requirements as a lawyer. Additionally, the trial court asked defendant whether he was sure about his decision multiple times and again cautioned that he was "creating a bigger problem" for himself. Finally, when the court asked defendant

whether he would be able to prepare jury instructions, a trial brief, a witness list, and an exhibit list on his own, defendant changed his mind and chose to continue working with Mr. Raslich. After this, the trial court commented to defendant that it "would really hate to see [defendant] go into a case like this without some help."

At the March 28, 2022 final pretrial, Mr. Raslich reported to the trial court that he did not complete jury instructions, a trial brief, and witness or exhibit lists because he and defendant were unable to agree on a defense. Therefore, Mr. Raslich brought to the court's attention defendant's previous motion to represent himself. However, Mr. Raslich, on behalf of defendant, stipulated to the jury instructions submitted by the prosecutor and agreed to the same witnesses that the prosecutor planned to call. The trial court then began a lengthy dialogue with defendant, stating that it wanted to "make sure that your rights are protected and that you are given the best opportunity to deal with what you have to deal with." The trial court added that it believed it was a good idea for defendant to have counsel. The trial court also advised defendant that he had several serious charges and stated, "I hope that you have really thought about this and listened to your lawyer and not to somebody else." Following this discussion, the trial court began questioning defendant about his decision to represent himself:

> *The Court*: You're still—you want to represent yourself, Mr. Smith?
>
> *The Defendant*: With Mr. Raslich on standby.
>
> *The Court*: Okay, again—now I am not completely convinced that you have no idea what you are doing. But I'm going to honor it. And I tell you, I probably will not sleep well over it. But, I just got done explaining to you that it is your absolute right and I'm going to respect it. I have tried and that's all I can do. You don't understand standby counsel either, I'm confident. He can't—he can't argue for you. All he can do is if you had a question regarding some sort of rule of evidence or something like that, then you could ask him that. But he is not going to make a record of anything. It is not going to interrupt the trial. Are you sure that's what you want to do?
>
> *The Defendant*: Yes, sir.
>
> *The Court*: You'll be making your own closing statements, opening statements, questioning your own witnesses. Not him. He won't do any of that, you understand that?
>
> *The Defendant*: Yes, sir.
>
> *The Court*: And is that what you want to do?
>
> *The Defendant*: Yes, sir.
>
> * * *
>
> *The Court*: . . . The—Mr. Smith, do you understand that you are at an absolute disadvantage by representing yourself? You understand that?

-2-

*The Defendant*: Yes, sir.

*The Court*: You understand that you will be bound by the same rules of evidence that the prosecutor, a[n] attorney of more than twenty years, is bound by?

*The Defendant*: Yes, sir.

*The Court*: Has anybody forced you or threatened you in any way to get you to represent yourself?

*The Defendant*: No, sir.

*The Court*: You are [going to] because you believe that it is in your best interest?

*The Defendant*: Yes, sir.

*The Court*: And you believe that you're competent enough and capable to represent yourself with these kind of charges?

*The Defendant*: Yes, sir.

*The Court*: Do you understand the maximum punishment for these charges if you are convicted of them?

*The Defendant*: Yes, sir.

*The Court*: Do you understand jury instructions?

*The Defendant*: Yes, sir.

*The Court*: Rules of evidence?

*The Defendant*: Yes, sir.

*The Court*: I'm sorry?

*The Defendant*: Yes, sir.

*The Court*: Alright. I can't do anything else. Did you go to—what is your level of education?

\* \* \*

*The Defendant*: Middle school. Seventh grade.

*The Court*: You didn't graduate from high school?

*The Defendant*: No, sir.

\* \* \*

*The Court*: Alright. You understand, Mr. Smith, that the Court won't be able to assist you either?

*The Defendant*: Yes, sir.

*The Court*: Mr. Smith, I'm going to say it one more time. You have the absolute right to represent yourself and I have tried to, to the best of my ability anyway, tried to explain to you that I think that that is a—that you at a—given your level of education, given your young age, given the seriousness of these charges, given the fact that I'm pretty confident, even though you indicated that you understand the rules of evidence, you understand jury instructions, that if I was to get more deeply into that, that I would find out that you do not. However, I have done everything I can at this point in time. We are going to—is this up?

\* \* \*

*The Court*: . . . So, before we conclude, are you sure you don't want anymore time to speak to Mr. Raslich?

*The Defendant*: Yes, sir.

*The Court*: Yes what?

*The Defendant*: I'm sure.

The trial court held another status conference on April 18, 2022, the day before trial. The court stated on the record that because defendant would be representing himself at the jury trial, the court wanted to make sure that everyone was ready to go, discuss "some ground rules," and ensure that defendant was aware of some of the "issues." When the court asked defendant whether he was ready to proceed, he responded:

> *The Defendant*: Actually, sir, I was going—I was actually going to try and speak to my standby attorney, Mr. Lazri—or Mr. Raslich today and I was going to speak to him about the proceedings tomorrow and I was going to—

The trial court acknowledged defendant's request and advised that it would give defendant time to speak with Mr. Raslich. Before going off the record for that discussion to take place, the court asked defendant whether he was aware that a minor child could not give consent and again mentioned the "situation" defendant created my representing himself:

> *The Court*: So there is—you can't mention that, okay? So, I'm not sure what your defense is and you don't need to tell me. But, I wanted to make sure, that is not a defense, okay? And I'm hoping that Mr. Raslich has already advised you of that. But, because I have tried and tried and tried to get you to realize that without the assistance of a lawyer, the situation you've created, and we are ready to proceed and that is the way we are going to be proceeding. We have prepared

the jury instructions tailored to you representing yourself.  So, we are ready to go.  If you want to speak with Mr. Raslich, I guess I can allow that.  Mr. Raslich, do you have time to do that?

*Mr. Raslich*: Yeah, I was unaware of this, but I'm here, so I can address some questions.

The trial court was in recess for 35 minutes.  When the court went back on the record, it stated that Mr. Raslich advised that defendant was requesting a bench trial.  After the prosecution stated that it would not waive its right to a trial by jury, the trial court asked Mr. Raslich if he wished to discuss anything further regarding that issue with defendant.  Mr. Raslich confirmed that he and defendant completed their discussion regarding a bench versus a jury trial.  The trial court then asked defendant whether he wanted any additional time to talk with Mr. Raslich, and defendant responded, "Not today, Your Honor."  After further discussion regarding the jury trial, the trial court stated, "I hope that you have thought about this.  I have given you more than enough time to think about it."  The trial court then again asked defendant whether he wished to talk to Mr. Raslich any further, and defendant declined.

On April 19, 2022, the date of trial, the trial court mentioned at the beginning of jury selection that defendant was representing himself and that Mr. Raslich was present if defendant wished to consult him.  Defendant then actively engaged in jury selection and exercised a peremptory challenge of a potential juror.  Once the jury was selected, the trial court asked defendant, "Anything before we recess?" and defendant responded, "No, Your Honor."  At the conclusion of the recess before recalling the jury, the trial court again asked defendant if he was ready for the jury and defendant responded in the affirmative.  During the trial court's initial instruction of the jury, the court stated:

> In this case, the defendant Austin Wade Smith, is representing himself.  This fact should not affect your decision in any way.  The defendant has the right to represent himself, and he has chosen to exercise that right.  A lawyer, Stephen M. Raslich, is present if the defendant wishes to consult him.

Once the procedural instructions were complete, the prosecutor and defendant both gave opening statements.  Defendant then cross-examined two witness called by the prosecution and prior to taking another recess, the court asked defendant if there was anything to discuss and defendant responded, "No, Your Honor."  When the court reconvened, defendant was again asked whether he was ready for the jury, to which he responded in the affirmative.  At the conclusion of the victim's direct examination, the trial court again asked defendant whether there was anything he wished to address before a lunch break, and defendant responded again, "No, Your Honor."

After the lunch break, but before bringing the jury back into the courtroom, the trial court advised defendant that he had a right to an attorney and reaffirmed that defendant wished to represent himself by stating:

> *The Court*: Before we bring the jury in, I just want to address something again that we have addressed several times already.  In fact, we were—I called for a hearing yesterday late afternoon just to confirm because we do have a young man

representing himself, just to confirm that we were ready to go to trial today. So, Mr. Smith, I want to make sure, again, you understand you have the right to an attorney. You have Mr. Raslich here, who has been here throughout all the proceedings. You still wish to continue representing yourself, correct?

*The Defendant*: For now, yes, Your Honor.

*The Court*: Alright. Alright. And are we ready for a jury?

*Mr. Bacarella*: I am, Your Honor.

*The Court*: Mr. Smith, you ready for a jury to come in?

*The Defendant*: Yes, Your Honor.

Defendant then completed his cross-examination of the victim. Before beginning his cross-examination of Trooper Jo Hamlin of the Michigan State Police, defendant requested a short break to prepare and was granted a fifteen minute recess. After completing the cross-examination, defendant called his own witness and made a closing argument. Defendant was convicted as stated.

Following defendant's conviction, he was represented by Mr. Raslich at his sentencing on July 18, 2022. At sentencing, Mr. Raslich objected to the scoring of offense variable (OV) 13, stating that OV 13 should not be scored unless defendant was part of a gang affiliation, and asked that the 25 points be reduced to zero. The trial court denied the objection and defendant was sentenced as stated above.

This appeal followed.

While this appeal was pending, defendant's appellate counsel filed two motions in the trial court—a motion to correct an invalid sentence on January 9, 2023, and a motion for a new trial on February 13, 2023. In the motion to correct an invalid sentence, defendant argued that OV 13 should have been scored at 0 points because, according to defendant, the conduct used to score OV 13 was the same conduct used to score OV 11, and according to MCL 777.43(2)(c), conduct that was used to score OV 11 (which was scored at 50 points) could not be used to score OV 13 unless the conduct related to membership in an organized criminal group or was gang-related. Because there was no evidence that defendant was a member of an organized criminal group or that his offenses were gang related, the CSC-III offenses could not be scored in OV 13 since they were already scored for OV 11. Further, defendant argued that his four convictions for CSC-IV were misdemeanors and should not be scored for OV 13. Defendant recognized that *People v Carlson*, 332 Mich App 663; 958 NW2d 278 (2020) states otherwise and is binding precedent, but argued that the trial court should prepare an opinion finding that *Carlson* was wrongly decided with respect to OV 13.

In the motion for a new trial, defendant argued that at his initial waiver, the trial court failed to comply with MCR 6.005(D)(1) by failing to advise defendant of the charges and the maximum possible prison sentences if convicted of the charges. Defendant also argued that the trial court failed to comply with MCR 6.005(E) on the date of trial by failing to advise defendant of his

continuing right to a lawyer's assistance and by failing to inquire if he still wished to waive his right to counsel prior to beginning trial. Defendant claimed that these were structural errors requiring the trial court to vacate defendant's convictions and sentences and to grant him a new trial.

On February 27, 2023, the trial court held a hearing on the motion to correct an invalid sentence and the motion for a new trial. Regarding defendant's motion to correct an invalid sentence, the trial court determined that *Carlson* was binding precedent which the court was required to follow and thus concluded that OV 13 was properly scored 25 points.

Turning to defendant's motion for a new trial, the trial court discussed defendant's initial waiver of counsel. As to why the trial court did not specifically state defendant's charges and the maximum possible penalty, the court pointed out that it asked defendant whether he understood the maximum possible punishment and defendant indicated that he did. The court stated that it was confident that defendant knew the nature of the charges against him because it "asked him several times" and "explained to him several times how serious they were." The trial court also stated that at defendant's arraignment, he waived the reading of the information, and defendant's counsel stated on the record that he discussed every charge with defendant and advised the court that defendant understood the seriousness of the allegations. Finally, the trial court stated that at the pretrial hearing on December 20, 2021, the court advised defendant that he was charged with five counts of CSC-III for a victim aged 13-15 and four counts of CSC-IV.

The trial court also explained its various reasons for not advising defendant prior to the start of jury selection and trial of his continued right to a lawyer's assistance and asking defendant to reaffirm that he did not want a lawyer's assistance. First, the trial court explained that because of the way the courthouse is set up, on the day of trial, the jury panel was sitting in the courtroom, which "doesn't give you a lot of opportunity to address the defendant on matters prior to trial beginning without excusing all the jury out into the hallways. And we just don't have a very big building." Second, the trial court stated that "less than 24 hours before the trial [started] I had, on my own initiative, had a hearing to bring Mr. Smith over to make sure that he was still wishing to represent himself; making sure we were ready to go the next morning." Third, the trial court explained that it had all of the attorneys, including defendant's standby counsel, Mr. Raslich, in chambers prior to trial for a brief discussion to confirm that they were ready to go and that defendant was still choosing to represent himself.[1]

---

[1] In its answer to defendant's motion for a new trial, the prosecution submitted an affidavit from Mr. Raslich, in which he confirmed that, on the morning of trial, he informed the court in chambers that defendant still wished to represent himself, that defendant understood his right to an attorney, and that defendant understood the penalty for the charges. In addition, Mr. Raslich stated that at the April 18, 2022 status conference the day before trial, he was given an extended period of time to meet with defendant, and during the conversation, he reminded defendant of his right to an attorney and the penalty for the charges. Mr. Raslich also stated that over the course of his representation of defendant, he discussed with defendant his charges as well as the penalty and defendant informed him "several times" that he wished to represent himself.

In the trial court's ruling denying defendant's motion for a new trial, the court explained in detail each discussion that it had with defendant regarding his desire to represent himself in the proceedings leading up to trial. The trial court also stated that defendant reaffirmed his desire to represent himself despite his right to an attorney on the day of trial after the lunch break. The trial court concluded that it believed "defendant made the decision to proceed as his own attorney unequivocally" and "with his eyes wide open." The trial court further stated that it did not believe any oversight in the matter was enough to defeat a finding of substantial compliance with the waiver of counsel procedures. The trial court also stated that the record supports that defendant was fully aware of the charges against him and that any failure to specifically restate the charges at the initial waiver was harmless. The trial court concluded that it believed that there was substantial compliance with caselaw and MCR 6.005 in that it conveyed the substance of both to defendant. The trial court thus denied defendant's motion for a new trial.

## II. WAIVER OF RIGHT TO COUNSEL

Defendant argues that his waiver of counsel was insufficient because the trial court failed to comply with MCR 6.005(D)(1) by not advising defendant of the charges and the maximum possible prison sentence for the offenses. Defendant further argues that the trial court failed to comply with MCR 6.005(E) by not advising defendant of his continuing right to a lawyer's assistance at public expense and by not inquiring of defendant if he still wished to waive his right to counsel at subsequent proceedings following his initial waiver. Defendant argues that these errors by the trial court warrant reversal and a new trial. We disagree.

## A. STANDARD OF REVIEW

We review de novo the entire record to determine whether a defendant has validly waived the right to counsel. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). Generally, this Court will not "disturb a trial court's factual findings regarding a knowing and intelligent waiver of Sixth Amendment rights unless that ruling is found to be clearly erroneous." *Id.* (quotation marks and citations omitted). "[T]he meaning of 'knowing and intelligent' is a question of law," and we review questions of law de novo. *Id.* (quotation marks and citations omitted). Likewise, "[t]he proper interpretation and application of a court rule is a question of law that is reviewed de novo." *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012).

## B. ANALYSIS

The Sixth Amendment of the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees the right to counsel at all critical stages for a criminal defendant facing imprisonment. *Williams*, 470 Mich at 641. In *Faretta v California*, 422 US 806, 819-820; 95 S Ct 2525; 45 L Ed 2d 562 (1975) the United States Supreme Court recognized that self-representation is also a constitutional right under the Sixth Amendment. The Michigan Constitution, Const 1963, art 1, § 13, and state statute, MCL § 763.1, also afford defendants the right to proceed *in propria persona*. See *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976). Since "the right of self-representation and the right to counsel are mutually exclusive," defendants must validly waive their right to counsel if they choose to exercise their right of self-representation. *People v Russell*, 471 Mich 182; 684 NW2d 745 (2004).

In *Anderson*, 398 Mich at 367-368, our Supreme Court established three requirements that a trial court must follow before allowing a defendant to proceed without counsel. The trial court must find that:

> (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*Russell*, 471 Mich at 190, citing *Anderson*, 398 Mich at 367-368.]

Further, a trial court shall "indulge every reasonable presumption against waiver of the right to counsel." *Russell*, 471 Mich at 193.

In addition to following *Anderson*, a trial court must comply with MCR 6.005(D) before it can permit a defendant to represent himself or herself. MCR 6.005(D) provides in relevant part:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first.
>
> > (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
> >
> > (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Trial courts must "substantially comply" with the requirements set forth in both *Anderson* and MCR 6.005(D). *People v Adkins (After Remand)*, 452 Mich 702, 726; 551 NW2d 108 (1996), overruled in part on other grounds by *Williams*, 470 Mich 634. See also *People v King*, 512 Mich 1, 11; ___ NW2d ___ (2023). "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Adkins (After Remand)*, 452 Mich at 726-727.

Following a defendant's initial waiver of the right to counsel, MCR 6.005(E) explains the steps that a trial court must follow to address a defendant's waiver at subsequent proceedings:

> If a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial or sentencing) need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,
>
> > (1) the defendant must reaffirm that a lawyer's assistance is not wanted; or

(2) if the defendant requests a lawyer and is financially unable to retain one, the court must refer the defendant to the local indigent criminal defense system's appointing authority for the appointment of one; or

(3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.

"Where there is error but it is not one of complete omission of the court rule and *Anderson* requirements, reversal is not necessarily required." *People v Dennany*, 445 Mich 412, 439; 519 NW2d 128 (1994). "Whether a particular departure justifies reversal will depend on the nature of the noncompliance." *Id.* (quotation marks and citation omitted). A trial court's error in failing to advise a defendant of the right to counsel at a subsequent hearing after that defendant has waived counsel is "harmless under any standard" if that defendant fails to allege that the error "prejudiced" him or her. *People v Lane*, 453 Mich 132, 141; 551 NW2d 382 (1996).

### 1. DEFENDANT'S INITIAL WAIVER/*ANDERSON* AND MCR 6.005(D)(1)

In this case, defendant admits that the trial court adequately warned defendant of the risks involved with self-representation at both the January 31, 2022 status conference and the March 28, 2022 final pretrial. However, defendant argues that at both of these hearings, the trial court failed to comply with MCR 6.005(D)(1) by not advising defendant of the charges against him and the maximum possible prison sentence he was facing if convicted. We disagree.

At the January 31, 2022 status conference, after defendant's trial counsel advised the trial court that defendant wished to represent himself, the trial court questioned defendant as to why. Not understanding defendant's reasoning, the trial court then warned defendant that he was facing several "serious charges" and that he would be at a "distinct disadvantage" as he would be held to the same standards as a lawyer. Then when the trial court asked defendant whether he would be able to prepare jury instructions, a trial brief, a witness list, and an exhibit list by himself without assistance of counsel, defendant changed his mind and decided to keep working with Mr. Raslich. Because defendant ultimately changed his mind and decided to keep working with his trial counsel at this status conference, defendant's argument that the trial court failed to comply with MCR 6.005(D)(1) by not advising defendant of the charges and the maximum possible prison sentence he was facing if convicted necessarily fails. The trial court's repeated warnings of the dangers and disadvantages of self-representation, in line with *Anderson* and MCR 6.005(D)(1), were enough to convince defendant that representing himself was not in his best interests. At that point, the trial court was no longer required to continue the inquiry.

At the March 28, 2022 final pretrial, after Mr. Raslich reported to the trial court that defendant decided that he wished to represent himself, the trial court began a lengthy dialogue with defendant, stating that it wanted to "make sure that your rights are protected and that you are given the best opportunity to deal with what you have to deal with." Following this discussion, the trial court again began the necessary inquiry under *Anderson* and MCR 6.005(D) about defendant's decision to represent himself. The trial court determined that defendant's request to represent himself was "unequivocal" by first asking him if he wanted to represent himself, and after hearing defendant's answer in the affirmative, then asking defendant if he was sure he wanted to do so at least three times at this hearing alone. The trial court also ensured that defendant was

asserting his right knowingly, intelligently, and voluntarily by asking defendant whether he understood exactly what representing himself would entail and warning him of the dangers and disadvantages of self-representation. The trial court explained that defendant's standby counsel would not be able to make arguments on defendant's behalf and that, instead, defendant would have to make his own opening statement and closing argument and question the witnesses. The trial court further warned defendant that he was at an "absolute disadvantage" by representing himself and that defendant would be bound by the same rules of evidence as the prosecution. When the trial court asked, defendant denied that anyone forced or threatened him into representing himself. The trial court asked defendant whether he believed that he was competent enough and capable of representing himself "with these kinds of charges," and defendant stated, "Yes, sir." The trial court also asked defendant whether he believed representing himself was in his best interests, and again defendant responded, "Yes, sir." The trial court found that defendant's self-representation would not disrupt, inconvenience, or burden the court by repeatedly stating that defendant had the "absolute right" to represent himself. Thus, the trial court made all of the necessary findings under *Anderson*.

Regarding MCR 6.005(D)(1), again, defendant acknowledges that the trial court properly advised him of the risks involved in self-representation. Defendant argues solely that the trial court failed to advise him of the charges and the maximum possible prison sentence. However, the trial court mentioned the serious nature of the charges against defendant multiple times and asked defendant, "Do you understand the maximum punishment for these charges if you are convicted of them?" Defendant responded, "Yes, sir." In *Adkins (After Remand)*, 452 Mich at 731, the Supreme Court held, "The fact that the judge did not specifically address the charged offense and the range of possible punishment is not enough to defeat a finding of substantial compliance with the waiver procedures in this case." See also *Williams*, 470 Mich at 683. The Court also noted that the judge had already expressed the nature of the charge and possible punishments to the defendant at his arraignment. *Adkins (After Remand)*, 452 Mich at 731. In this case, at defendant's arraignment, he waived the reading of the information, and defendant's counsel at the time stated on the record that he discussed every charge with defendant and advised the court that defendant understood the seriousness of the allegations. Although the trial court did not specifically mention *Anderson*, the court rule, the specific charges, or the exact maximum possible prison sentence, the trial court substantially complied with MCR 6.005(D)(1) with its inquiry to defendant regarding his understanding of the maximum punishment combined with the court's advice on the risks associated with self-representation and the court's following of *Anderson*.

## 2. SUBSEQUENT WAIVERS/MCR 6.005(E)

Next, defendant argues that the trial court failed to comply with MCR 6.005(E) at the status conference the day before trial and on the date of trial by not giving defendant any advice pertaining to his waiver of counsel and asking defendant whether he still wished to waive counsel and represent himself at trial. We disagree.

On April 18, 2022, the day before trial, the trial court on its own initiative scheduled a status conference to make sure that defendant still wished to represent himself at trial and to ensure that all parties were ready to start the next day. At that hearing, defendant requested to speak to Mr. Raslich and was given time to consult with him as he wished. Following a 35 minute recess,

-11-

the court went back on the record, and was advised by Mr. Raslich that defendant wished to request a bench trial instead of a jury trial. The trial court denied this request as the prosecution did not agree to waive its right to a jury trial. The trial court then again asked defendant whether he needed additional time to speak with Mr. Raslich, and defendant responded, "Not today, Your Honor." After further discussion regarding the jury trial, the trial court again commented to defendant about his choice to represent himself, "I hope that you have thought about this. I have given you more than enough time to think about it." The trial court then again asked defendant whether he wished to talk to Mr. Raslich any further, and defendant declined. Because the whole purpose of the status conference was to ensure that defendant was ready to represent himself at trial the next day, defendant was given ample opportunity to have discussion with his standby counsel, standby counsel requested waiver of the bench trial on defendant's behalf, and the trial court again warned the defendant that it hoped he had "thought about" his decision to represent himself, the trial court substantially complied with MCR 6.005(E).

On April 19, 2022, the date of trial, the trial court had all of the attorneys, including defendant's standby counsel, Mr. Raslich, in chambers prior to trial for a brief discussion to confirm that they were ready to go and that defendant was still choosing to represent himself. Next, the trial court mentioned at the beginning of jury selection that defendant was representing himself and that Mr. Raslich was present if defendant wished to consult him. Defendant then actively engaged in jury selection and exercised a peremptory challenge of a potential juror. Prior to every recess during trial, the trial court asked defendant whether there was anything he wished to discuss while the jury was out of the courtroom, and defendant repeatedly declined. At the conclusion of every recess, the trial court asked defendant whether he was ready for the jury, to which defendant always responded in the affirmative. Therefore, defendant was given ample opportunities to mention that he no longer wished to represent himself. During the trial court's initial instruction of the jury, the court stated that defendant had chosen to represent himself and that this fact should not affect the jury's decision. After the lunch break, but before bringing the jury back into the courtroom, the trial court reaffirmed that defendant wished to represent himself by stating, "Mr. Smith, I want to make sure, again, you understand you have the right to an attorney. You have Mr. Raslich here, who has been here throughout all the proceedings. You still wish to continue representing yourself, correct?" Defendant again responded in the affirmative. Thus, although the trial court neglected to confirm on the record that defendant did not want a lawyer's assistance before beginning jury selection and the trial, the trial court received confirmation from defendant's standby counsel before jury selection, the trial court reviewed defendant's right to an attorney and his decision to self-represent after the lunch break, and defendant reaffirmed that he wanted to represent himself.

Further, defendant's argument fails because defendant does not explain how the trial court's failure to advise him of his continued right to counsel and to reaffirm that he wished to represent himself before beginning jury selection and trial prejudiced him. In *Lane*, the Supreme Court stated that the trial court's failure to advise the defendant of his right to counsel at his sentencing hearing that took place three and a half months after his initial waiver of counsel at trial could have been decisive of the outcome of the sentencing as the record reflected the defendant's obvious confusion and lack of preparation. *Lane*, 453 Mich at 141. However, the Supreme Court determined that the trial court's error was "harmless under any standard because defendant has not alleged that the error has prejudiced him in any way" and thus affirmed defendant's convictions and sentence. *Id.* at 141-142. Similarly, here, defendant failed to allege that the trial court's failure

to strictly follow MCR 6.005(E) prejudiced him in any way. Defendant affirmed his decision to represent himself after the lunch break and had ample opportunities prior to that time to assert his right to counsel. Further, at no time during trial did defendant appear confused or unprepared. In fact, he repeatedly affirmed that he was ready for the jury throughout trial, actively participated in voir dire, cross-examined every witness called by the prosecution, called his own witness, and made both an opening statement and closing argument. Under these facts, the trial court substantially complied with MCR 6.005(E), and any error by the trial court in this regard was harmless.

## III. OV 13

Next, defendant argues that OV 13 should have been scored at 0 points because, according to defendant, the conduct used to score OV 13 was the same conduct used to score OV 11, and according to MCL 777.43(2)(c), conduct that was used to score OV 11 (which was scored at 50 points) could not be used to score OV 13 unless the conduct related to membership in an organized criminal group or was gang-related, and defendant's conduct was not. Further, defendant argues that his four convictions for CSC-IV were misdemeanors and should not be scored for OV 13. Defendant recognizes that *People v Carlson*, 332 Mich App 663; 958 NW2d 278 (2020) states otherwise and is binding precedent, but argues that this Court should prepare an opinion finding that *Carlson* was wrongly decided with respect to OV 13 and that the four CSC-IV convictions should be considered misdemeanors as defined by MCL 761.1(n) and not scored for OV 13. We disagree.

## A. STANDARD OF REVIEW

"Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). "A trial court's findings of fact are clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court make a mistake." *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014). "We review de novo whether the facts as found were adequate to satisfy the statutory scoring conditions." *Carlson*, 332 Mich App at 666.

## B. ANALYSIS

OV 13 is an offense variable entitled, "Continuing Pattern of Criminal Behavior," MCL 777.43. To score 25 points under OV 13, the offense must be "part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Defendant was scored 25 points for OV 13 based on the four counts of CSC-IV.

The penalty provision of the CSC-IV statute states, "Criminal sexual conduct in the fourth degree is a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $500.00, or both." MCL 750.520e(2). However, the sentencing guidelines are part of the Code of Criminal Procedure, MCL 760.1 *et seq*. MCL 761.1(f) defines "felony" as "a violation of a penal law of this state for which the offender, upon conviction, may be punished by imprisonment for more than 1 year or an offense expressly designated by law to be a felony." Because CSC-IV is punishable by up to two years of imprisonment, defendant's four CSC-IV

convictions are considered "felonious criminal activity for purposes of scoring the sentencing guidelines." *Carlson*, 332 Mich App at 671. Thus, the trial court properly relied on the CSC-IV convictions in scoring OV 13.

Defendant's argument is thus without merit and his sentence must be affirmed as *Carlson* is binding precedent which determined that CSC-IV qualifies as a felony for the purposes of scoring OV 13. *Id.*

Affirmed.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle